UNITED STATES of America,
Plaintiff–Appellee,

v.

Afnan Jerome PARKER, Defendant–
Appellant.

No. 93–5609.

United States Court of Appeals,
Fourth Circuit.

Argued May 13, 1994.

Decided July 27, 1994.

**ARGUED:** Deborah C. Wyatt, Wyatt & Carter, Charlottesville, VA, for appellant. Stephen Urban Baer, Asst. U.S. Atty., Roanoke, VA, for appellee. **ON BRIEF:** Robert P. Crouch, Jr., U.S. Atty., Roanoke, VA, for appellee.

Before MURNAGHAN, Circuit Judge, LEGG, United States District Judge for the District of Maryland, sitting by designation, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Circuit Judge MURNAGHAN wrote the opinion, in which Judge LEGG and Senior District Judge ERWIN joined.

## OPINION

MURNAGHAN, Circuit Judge:

Defendant-appellant Afnan Jerome "Tony" Parker was indicted and convicted for distributing, or possessing with the intent to distribute, cocaine base ("crack") within 1000 feet of a playground. He was sentenced to 112 months' imprisonment, to be followed by eight years of supervised release. He now appeals, principally challenging (1) the district court's denial of his pretrial motion to dismiss the indictment for violation of the Speedy Trial Act of 1974, as amended, 18 U.S.C. §§ 3161–3174; and (2) the sufficiency of the evidence that the drug possession was within 1000 feet of a "playground," as defined in 21 U.S.C. § 860. We affirm on the first ground, but reverse and remand on the second.

I

In the early morning hours of July 21, 1991, the Charlottesville (Virginia) Police Department received a tip that a juvenile known as "Tank" was selling crack cocaine from the front porch of 413 Fifth Street, approximately 400 feet from Tonsler Park. As Detectives Don Campbell and Mike Dean arrived at the house and identified themselves, Clarence "Tank" Jackson (a 13–year–old who matched the description given by the informant) and defendant-appellant "Tony" Parker, a 25–year–old, stood up. Scattered in front of Jackson were four plastic baggies containing crack. In front of Parker, Detective Campbell observed a police radio scanner and a paper bag which contained 54 plastic baggies

of crack. The detectives arrested Jackson and Parker, and seized a total of 10.19 grams of crack, as well as the police radio scanner and several hundred dollars in cash.

On September 24, 1991 a grand jury sitting in the United States District Court for the Western District of Virginia, Charlottesville Division, indicted Parker for one count of distributing, or possessing with the intent to distribute, more than five grams of crack within 1000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 860(a). He was arraigned on October 22. On November 7 Parker's defense counsel filed a written motion to withdraw as counsel. The court took the motion under advisement, but conducted no hearing on it. On November 26 the court appointed a new attorney for Parker. The newly appointed counsel made no request to delay the trial, which was then scheduled to commence on December 16. On December 6 the court formally filed an order permitting the original attorney to withdraw as Parker's counsel of record.

Although Parker's trial had been scheduled for mid-December, the district judge delayed it until January 16, 1992. While in pretrial detention, Parker was given a physical examination and later informed that he had tested positive for the HIV virus. On January 8 Parker filed a motion to dismiss the indictment on the ground that the court had violated his rights under the Speedy Trial Act. At a hearing on January 13, the district court, relying on one of the Act's excludable-time provisions, 18 U.S.C. § 3161(h)(1)(J), denied the motion to dismiss.

Parker was tried before a jury on January 16. Although he was charged with drug possession or distribution within 1000 feet of a "playground"—a term defined with some specificity in 21 U.S.C. § 860—the only evidence pertaining to the supposed "playground" was Detective Dean's testimony that the edge of Tonsler Park lay about 400 feet from the front porch of 413 Fifth Street (where he had arrested Parker and seized the crack), Parker's testimony that he had met Jackson at the basketball court in Tonsler Park, and Jackson's testimony that he had met Parker while playing one-on-one basketball in Tonsler Park. The jury was given no instruction on the specific definition of the word "playground" that is contained in § 860. Parker did not then object to the jury instructions.

The jury found Parker guilty as charged, expressly indicating on the verdict form that the possession "occur[red] within one thousand feet of real property comprising a playground." The district court entered a judgment of conviction for one count, under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 860(a).

At sentencing, Parker's base offense level was 28—level 26 for the quantity of crack under U.S.S.G. § 2D1.1(c)(9), plus a two-level enhancement under U.S.S.G. § 2D1.2(a)(1) for a drug offense "directly involving a protected location," i.e., a playground. Because Parker was deemed the leader of a small, unorganized criminal activity—transporting crack to the Charlottesville area and enlisting local youths to distribute the substance—his offense level was increased another two levels under U.S.S.G. § 3B1.1(c). His criminal history category was II, based on his 1988 conviction for assault with a deadly weapon, a crime in which the victim was shot six times and became paralyzed as a result. With a criminal history category of II and a total offense level of 30, the applicable guideline range was 108 to 135 months of imprisonment. The judge sentenced Parker to 112 months' imprisonment (with credit for time served, including time served during pretrial detention), to be followed by eight years of supervised release. The court recommended to the Bureau of Prisons that Parker be confined in a medical institution suitable for the treatment of AIDS. Parker, faced with the prospect of dying in federal custody, now appeals.

II

Parker's first claim of error is that the district court should have dismissed the charge pending against him because the court had violated the Speedy Trial Act of 1974, as amended, 18 U.S.C. §§ 3161–3174 ("the Act"). Specifically, he claims that the court below misinterpreted 18 U.S.C. § 3161(h)(1)(J) ("subparagraph (J)"). We review the legal conclusions in the district

court's application of the Act *de novo*. *See United States v. Wright*, 990 F.2d 147, 148 (4th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 199, 126 L.Ed.2d 157 (1993).

## A

The Speedy Trial Act entitles a criminal defendant to dismissal of the charges pending against him if he is not brought to trial within 70 days of his initial appearance or indictment. *See* 18 U.S.C. §§ 3161(c)(1), 3162(a)(2). In computing the running of the 70-day period, § 3161(h)(1) excludes certain periods of delay resulting from pretrial proceedings:

(h) The following periods of delay shall be excluded . . . in computing the time within which the trial . . . must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

· · · · ·

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; [and]

· · · · ·

(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

*Id.* §§ 3161(h)(1)(F), (J).

In *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), the Supreme Court interpreted subparagraphs (F) and (J) of § 3161(h)(1) and

recognized that the former subparagraph mandates a distinction between pretrial motions that require a hearing and those that do not. Where a hearing is required, subparagraph (F) excludes the entire period from the filing of the motion to the conclusion of the hearing on that motion, regardless of whether any delay in holding the hearing was "reasonably necessary." Once the court has held the hearing and received any post-hearing submissions from the parties that it needs for proper disposition of the motion, the court takes the motion "under advisement" and subparagraph (J) excludes up to 30 additional days thereafter, up to and including the date on which the court finally disposes of the motion.[1] If the pretrial motion requires no hearing, sub paragraph (F) excludes the period from the filing of the motion to the time the court receives all the papers it reasonably expects. Once the court has received the papers, the motion "is actually under advisement" and subparagraph (J) excludes up to 30 additional days thereafter, up to and including the date on which the court finally disposes of the motion. *See id.* at 326–31, 106 S.Ct. at 1874–77.[2]

## B

In the present case, Parker was arraigned on October 22, 1991. If there were no periods of excludable delay, his 70-day period would have expired on December 31. The trial commenced on January 16, 1992—sixteen days after the initial 70-day period would have expired, barring any periods of excludable delay. Applying subparagraph (F), the Government has sought to exclude six days—from January 8, 1992 (when Parker filed his motion to dismiss the indictment for violation of the Speedy Trial Act) to

1. A court "finally disposes of the motion" when either (1) the clerk of the court officially files the judge's written decision, or (2) the judge renders his decision orally in open court, whichever is earlier. *See United States v. Martinez*, 749 F.2d 623, 625 & n. 1 (11th Cir.1984).

2. Contrary to Parker's understanding, *Henderson* holds only that the operation of subparagraph (F) depends upon whether the pretrial motion at issue requires a hearing. By contrast, the operation of subparagraph (J)—the statutory provision of critical importance here—does *not* depend on whether a pretrial hearing is held. *See id.; e.g.*,

*United States v. Chalkias*, 971 F.2d 1206, 1211 (6th Cir.) (per curiam) (following *Henderson* and applying subparagraph (J) to the consideration of a pretrial motion that required no hearing), *cert. denied*, —— U.S. ——, 113 S.Ct. 351, 121 L.Ed.2d 265 (1992); *United States v. Driver*, 945 F.2d 1410, 1412–14 (8th Cir.1991) (same), *cert. denied*, —— U.S. ——, 112 S.Ct. 1209, 117 L.Ed.2d 448 (1992); *United States v. Gonzales*, 897 F.2d 1312, 1314–16 (5th Cir.1990) (same), *cert. denied*, 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991); *United States v. Pelfrey*, 822 F.2d 628, 633–36 (6th Cir.1987) (same).

January 13, 1992 (when the court held a hearing on and denied that motion), inclusive. On appeal, Parker has not challenged that exclusion. *See Wright*, 990 F.2d at 149 n. 4 (stating that a motion to dismiss on Speedy Trial Act grounds is a motion causing excludable delay under subparagraph (F)) (citation omitted); *United States v. Wilson*, 835 F.2d 1440, 1444 (D.C.Cir.1987) (same). After excluding the six days, Parker's trial appears to have commenced on the 80th day after arraignment—ten days too late. Parker's appeal hinges, therefore, on whether there were at least ten additional excludable days of delay under the Speedy Trial Act.

 The period whose excludability remains in controversy began on November 7, 1991, when Parker's attorney filed a written motion to withdraw as counsel. The court took the motion under advisement, but conducted no hearing. On November 26 the court appointed new counsel. On December 6 the court formally filed an order permitting the original attorney to withdraw as Parker's counsel of record. By mid-December the substitute counsel was prepared to proceed to trial, and nothing in the record indicated that the change of counsel would actually necessitate or cause any delay in the start of the trial. Nevertheless, the district court, after some confusion,[3] held that the entire period from November 7 to December 6, 1991 was excluded and therefore denied Parker's motion to dismiss the indictment.[4]

## C

As an initial matter, we note that the district judge's ruling comported with the Judicial Conference's rather detailed "Guidelines to the Administration of the Speedy Trial Act." *See* Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended (Dec. 1979 rev., with amendments through Oct. 1984), 106 F.R.D. 271, 292 (1984) (discussing "[Subparagraph] (J)—Proceedings Under Advisement") [hereinafter *Judicial Conference Guidelines*]. Those guidelines provide that "[t]he starting date [for a subparagraph (J) exclusion] is the day following the day on which the court has received everything it expects from the parties ... before reaching a decision," and that "[t]he ending date is the earliest of (1) the date the judge's decision is filed, (2) the date the judge renders his decision orally in open court, or (3) the expiration of the 30-day maximum period." *Id.*

Applying the Judicial Conference Guidelines here, the starting date would have been November 8, 1991, the day following the date on which the court had received everything it expected from the parties regarding the motion to withdraw. The ending date would have been December 6, 1991, the earliest of (1) the date the judge's decision was filed

---

**3.** Initially, on December 20, 1991, the district judge cited the wrong statutory provisions, 18 U.S.C. §§ 3161(h)(1)(I) and 3161(h)(8)(A), as the grounds for excluding certain periods of delay from his Speedy Trial Act calculations. About three weeks later the judge admitted that the earlier order was "in error" and cited § 3161(h)(1)(J) as the proper authority for delaying the commencement of the trial.

At oral argument on appeal, Parker's attorney made much of the district court's fumbling, suggesting that the earlier "bogus" excuses for delay were indicative of bad motive. Appellant's suggestion is misplaced. The fact that the district judge initially identified the wrong exclusion under § 3161(h) is irrelevant to the proper disposition of the case on appeal, for two reasons. First, the district judge himself caught, and timely corrected, his error. Second, as an appellate court, we may affirm on any legal ground for which there is a sufficient evidentiary foundation. *See, e.g., United States v. Hammad*, 902

F.2d 1062, 1064 (2d Cir.), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990).

However, the confusion engendered below suggests that a district court should attempt to invoke the relevant provisions of § 3161(h) (and to record them on the docket) as the case progresses, rather than waiting until the Act's 70-day time limit is about to expire. Such timely recordkeeping will ensure that the district court, the United States Attorney, and the defense all know how much excludable time exists and how much time remains on the 70-day clock. It also will facilitate the clerk's efforts to schedule cases in the proper sequence. *See* Robert L. Misner, *Speedy Trial: Federal and State Practice* § 17–9, at 259 (1983); *see also Henderson*, 476 U.S. at 332 n. 10, 106 S.Ct. at 1878 n. 10.

**4.** Had the court excluded only the period from November 7 to *November 26*, 1991, it would have reached the same result: a denial of Parker's motion to dismiss.

(December 6), or (2) the expiration of the 30–day maximum period (December 7). And—most important—the starting date, the ending date, *and the entire period in between* would be *automatically* excluded under subparagraph (J), as interpreted by the Judicial Conference. Thus, had the district court adhered perfectly to the Conference Guidelines, it would have excluded 29 days for consideration of the pretrial motion and therefore would have reached precisely the same result: a denial of Parker's motion to dismiss the indictment.[5]

### D

Notwithstanding the district court's substantial compliance with the Judicial Conference Guidelines, Parker argues that the court violated subparagraph (J) by attributing nearly a month to a simple, routine motion to withdraw as counsel. Under the statute's express language, Parker contends, the exclusion is not "automatic": the court could properly exclude only the "delay *reasonably attributable* " to the period during which the motion was "*actually* under advisement by the court." 18 U.S.C. § 161(h)(1)(J) (emphases added). His reading of that language would allow a district court, when faced with a pretrial motion that requires no hearing, to exclude only the delay actually and reasonably caused by the motion.

In the instant case, Parker contends, the district court actually spent almost no time at all considering the motion to withdraw and therefore zero days should be excluded. At most, the court could reasonably have excluded *two* days—the day the motion was filed and the day the court disposed of it. *See Wright,* 990 F.2d at 149 (citation omitted). By Parker's "causation" theory, the intervening dates cannot automatically be excluded. In effect, Parker would have us hold that the intervening dates may be excluded only if the district court makes specific findings on the record to the effect that (1) the trial was *actually* delayed by the court's consideration of the pretrial motion, and (2) the delay caused by the motion was reasonable in duration. We hold that Parker's interpretation of subparagraph (J) is wrong, for several reasons.

### 1

■ First, and most important, the plain language of subparagraph (J), when read in the context of the entire Act, cannot support Parker's interpretation. On its face, § 3161(h)(1)(J) excludes "*[a]ny* period of delay" reasonably attributable to "*any* period" during which a pretrial motion is under advisement. It does *not* require the district court to make express judicial findings that the pretrial motion actually and reasonably caused a delay in the start of the trial. By contrast, ¶ (8) of § 3161(h), which excludes periods of delay resulting from continuances that serve the "ends of justice," expressly provides:

> No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection *unless the court sets forth, in the record of the case, either orally or in writing, its reasons* for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8)(A) (emphasis added). Thus, Congress knew how to require specific judicial findings—it simply chose not to require them for periods of delay excluded under subparagraph (J).

Indeed, the Act's legislative history suggests that Congress's very purpose in drafting subparagraph (J) was to avoid ¶ (8)'s requirement that judges make specific findings on the record. Subparagraph (J) "was added by the Senate Judiciary Committee so that such exclusions would not have to be made under the 'ends of justice' continuance provision [¶ (8) ]; the 30–day limitation was

---

5. Under the Judicial Conference Guidelines, the district court's only "error"—excluding November 7, the day that Parker's counsel filed the motion to withdraw—was of no consequence. Moreover, under the district court's local rules, excluding November 7 apparently was proper.

*See* United States District Court for the Western District of Virginia, Speedy Trial Act of 1974 Plan, § II.B.4.(g) ("In counting the number of days in an excludable period, the first (beginning) and last (ending) days of the period shall be included.").

later added by the House" to prevent district judges from excluding additional time without setting forth in the record the required "ends of justice" finding. Richard S. Frase, *The Speedy Trial Act of 1974*, 43 U.Chi. L.Rev. 667, 693 & n. 135 (1976) (footnote omitted) (citing S.Rep. No. 1021, 93d Cong., 2d Sess. 36 (1974); H.R.Rep. No. 1508, 93d Cong., 2d Sess. 32–33 (1974)), *quoted in United States v. Mers*, 701 F.2d 1321, 1335 n. 14 (11th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983); *see also* Anthony Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974*, at 26–27, 104, 106–07 (Fed. Judicial Center 1980) [hereinafter *Legislative History* ].[6] Thus, the fact that subparagraph (J) does not require express judicial findings is no accident: it was drafted precisely to avoid such a requirement.

Congress subsequently reaffirmed its intention. In 1979 it amended § 3161(h)(1) but "le[ft] intact ... the *automatic* application of exclusions as provided in existing law." S.Rep. No. 212, 96th Cong., 1st Sess. 33 (1979) (emphasis added), *excerpted in Legislative History, supra*, at 113–14. Specifically, the Senate Judiciary Committee's Report noted that § 3161(h)(1) "currently provides that periods of delay consumed by the following are to be *automatically* excluded: ... Periods when [pretrial motions] are under advisement by the court." *Id.* (emphasis added). Thus, both the Ninety–Third Congress, which drafted and enacted subparagraph (J), and the Ninety–Sixth Congress, which expressly refused to alter it, intended that provision to operate automatically, without requiring any particularized judicial determination that the pretrial motion had actually caused a delay of trial.

**2**

Our reading of the statute (and of its legislative history) finds overwhelming support in

the case law. In *Henderson*, the Supreme Court held that subparagraph (F) excludes from the Act's 70–day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, regardless of whether a delay in holding that hearing was "reasonably necessary." *Henderson*, 476 U.S. at 330, 106 S.Ct. at 1877 (interpreting 18 U.S.C. § 3161(h)(1)(F)). In so holding, the Court suggested that *every* provision in § 3161(h)(1)—including subparagraph (J)—*automatically* excludes periods of delay resulting from pretrial proceedings and therefore requires no inquiry into the reasonableness of the delay. Indeed, speaking specifically of subparagraphs (F) and (J), the court stated that Congress "exclude[d] *automatically* all the time prior to the hearing on a motion and 30 days after the motion is taken under advisement." 476 U.S. at 331, 106 S.Ct. at 1877 (emphasis added); *see also id.* at 327, 106 S.Ct. at 1875 (stating that exclusion of the periods defined in § 3161(h)(1) "was intended to be automatic" (citation and internal quotation marks omitted)). Thus, the *Henderson* Court apparently contemplated the automatic exclusion of up to 30 days when a pretrial motion was actually under advisement by the court, regardless of whether the period of advisement was unreasonably long and regard less of whether the consideration of the pretrial motion actually caused the court to postpone the trial date. *See United States v. Chalkias*, 971 F.2d 1206, 1211 (6th Cir.) (per curiam) ("The Supreme Court has held that Congress intended to 'exclude automatically' the thirty days after a motion is taken under advisement by a District Court." (quoting *Henderson*, 476 U.S. at 331, 106 S.Ct. at 1877)), *cert. denied*, —— U.S. ——, 113 S.Ct. 351, 121 L.Ed.2d 265 (1992).

Following *Henderson*, the Courts of Appeals have consistently reached the same

---

**6.** The Federal Judicial Center's legislative history of the Act explains:

The 1972 Senate subcommittee bill ... provid[ed] that the exclusion for delay resulting from other proceedings covered "only such court days as are actually consumed" and that time during which a matter is under advisement or awaiting decision could not be excluded. In 1974, the full Senate Judiciary Commit-

tee rejected that solution. It eliminated the language restricting the exclusion to "court days," and added language stating that delay from "other proceedings" includes delay "reasonably attributable to any period during which any proceeding concerning the defendant is actually under advisement."

*Legislative History, supra*, at 26–27 (footnotes omitted).

conclusion. *Chalkias,* 971 F.2d at 1211; *United States v. Pelfrey,* 822 F.2d 628, 633–36 (6th Cir.1987); *see Wilson,* 835 F.2d at 1441–44; *United States v. Montoya,* 827 F.2d 143, 151 (7th Cir.1987); *see also United States v. Smith,* 563 F.Supp. 217, 219 (D. Md.1983) (referring to subparagraph (J) as an "automatic exclusion[ ]"), *aff'd,* 750 F.2d 1233 (4th Cir.1984) (per curiam), *cert. denied,* 471 U.S. 1057, 105 S.Ct. 2122, 85 L.Ed.2d 486 (1985); *cf. United States v. Velasquez,* 802 F.2d 104, 105 (4th Cir.1986) (holding that, under subparagraph (F), a court should not inquire into whether a delay was "actually caused" by a pretrial motion).[7]

More specifically, the Courts of Appeals have repeatedly upheld exclusions for periods of delay during which district courts considered motions to withdraw as counsel or motions to substitute counsel—again, without regard to the causation or reasonableness of those periods of delay. *See, e.g., United States v. Driver,* 945 F.2d 1410, 1412–14 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1209, 117 L.Ed.2d 448 (1992); *United States v. Gonzales,* 897 F.2d 1312, 1314–16 (5th Cir.1990), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991); *United States v. Richmond,* 735 F.2d 208, 213 (6th Cir.1984). As the Second Circuit recently noted, when the defense counsel files a motion to withdraw, automatic extension of the trial date by up to 30 days, while substitute counsel is being located, "is equitable since it is consistent with the ordinary effect substitution of counsel has of delaying the progress of a trial." *United States v. Hammad,* 902 F.2d 1062, 1064 (2d Cir.), *cert.*

*denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). Indeed, to disallow the exclusion would, in many cases, have the perverse effect of rushing the case to trial and thereby denying the new defense counsel the time necessary for effective preparation.[8]

### 3

Parker has invited us to reject the reasoning adopted by every circuit that has reached the question presented in this case. We decline that invitation and instead affirm the district court's denial of Parker's motion to dismiss.

■ In affirming the district court's ruling, however, we note that our holding is not a broad one. Specifically, we do *not* hold that a district court may reflexively delay a trial by an additional 30 days whenever it is confronted by a new pretrial motion. As the Supreme Court stated in *Henderson,* if a motion is " 'so simple or routine that [it does] not require a hearing, necessary advisement time should be considerably less than 30 days' " in most instances. 476 U.S. at 329, 106 S.Ct. at 1876 (quoting S.Rep. No. 212, 96th Cong., 1st Sess. 34 (1979)). Furthermore, if a district court were to assert, after the fact, that a series of consecutive 30–day delays had been "reasonably attributable" to the consideration of pretrial motions, yet we found those motions to be clearly frivolous or merely ministerial, we would not hesitate to reverse for an abuse of discretion.

That, however, is not the case here. Only one period of delay is at issue. The district

---

**7.** The leading scholarly commentators on the Speedy Trial Act agree. Professors LaFave and Israel have written that the exclusions listed in § 3161(h)(1) "are automatic and no factual determination of whether the trial was actually delayed is necessary." 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 18.3(b), at 413 n. 16 (1984). Professor Misner refers to ¶¶ (1)-(7) of § 3161(h) as the *"automatically* excludable time provisions." Misner, *supra* note 3, § 17–9, at 259 (emphasis added). By contrast, he does not use the word "automatic" to describe exclusions under ¶ (8) of § 3161(h), the "ends of justice" provision, which requires express judicial findings for the record. *See id.* § 17–10, at 276–90; *see also* Criminal Procedure Project, *Twenty–Third Annual Review of Criminal Procedure: United States Supreme Court and*

*Courts of Appeals 1992–1993,* 82 Geo.L.J. 915, 919 n. 1288 (1994) ("The exclusions of § 3161(h)(1)-(7) are largely automatic.").

Similarly, Richard Frase of the University of Chicago, in discussing subparagraph (J), has argued that Congress "probably *should* have ... require[d] the judge to justify the reasons for delay in each case," but it did not do so. Frase, *supra,* at 694 (emphasis added).

**8.** The Act requires district courts to schedule trials so as to permit defense counsel adequate preparation time. *See* 18 U.S.C. § 3161(c)(2) ("Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel....").

judge took 19 or 20 days to appoint substitute counsel for Parker; he then allowed another 10 days to elapse before filing a formal order, thus giving the newly appointed counsel time to check for possible conflicts. When later challenged under the Speedy Trial Act, the same judge held an adversarial hearing in open court and determined that the entire 29– or 30–day delay was reasonably attributable to the crucial task of substituting defense counsel. We have no basis for disturbing his determination. Therefore, we affirm the district court's ruling on the Speedy Trial Act issue.

### III

Parker's next claim of error is that there was insufficient evidence in the record that he possessed crack near a playground, as the word "playground" is defined in 21 U.S.C. § 860. Because his contention is correct, we reverse Parker's judgment of conviction and sentence under § 860 and remand the case for resentencing.

### A

The grand jury indicted Parker for one count of distributing, or possessing with the intent to distribute, crack cocaine within 1000 feet of real property comprising a playground, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 860(a). Section 841(a)(1) prohibits, among other things, the knowing or intentional possession of a controlled substance with intent to distribute. When a violation of § 841(a)(1) involves at least five grams of a mixture or substance containing cocaine base, and the defendant is a first-time offender, and neither death nor serious bodily injury resulted from the use of the cocaine base, § 841(b)(1)(B) provides for a sentence of between five and forty years of imprisonment and at least four years of supervised release.

Section 860(a) doubles the potential punishment under § 841 for those defendants who distribute drugs, or possess drugs with the intent to distribute, near schools, playgrounds, swimming pools, or certain other spots frequented by children. In relevant part, § 860(a) provides:

> Any person who violates section 841(a)(1) ... by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising ... a playground ... [is] subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense....

21 U.S.C. § 860(a). Thus, in a case involving a first-time offender who possessed at least five grams of cocaine base, where death or serious bodily injury did not result from the drug's use, the statutes would provide for a sentence of between five and eighty years of imprisonment plus at least eight years of supervised release.

Section 860(d) defines the term "playground" as

> any outdoor facility (including any parking lot appurtenant thereto) intended for recreation, open to the public, and with any portion thereof containing three or more separate apparatus intended for the recreation of children including, but not limited to, sliding boards, swingsets, and teeterboards.

*Id.* § 860(d)(1).

### B

Although Parker has claimed throughout that he is innocent and that Jackson was the actual drug-dealer, Parker's appeal does not challenge the sufficiency of the evidence on which the jury found him guilty of possession with the intent to distribute crack, in violation of § 841. He does contend, however, that the evidence was insufficient to prove beyond a reasonable doubt that his § 841 violation occurred within 1000 feet of a "playground," as defined in § 860; therefore, Parker claims, he should not have been convicted or sentenced under § 860. Had he been convicted and sentenced only under § 841, his term of imprisonment could have been reduced by approximately two years.

In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favor-

able to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

At trial, the judge did not instruct the jury as to the statutory definition of "playground." The only evidence before the jury on the nature of Tonsler Park was: (1) Detective Dean's testimony that, using his car odometer, he determined that the house at 413 Fifth Street (where the police arrested Parker and seized the crack) was "approximately 400–some feet" from the edge of Tonsler Park;[9] (2) Parker's testimony that he had first met Jackson at the basketball court in Tonsler Park; and (3) Jackson's testimony that he had met Parker while playing one-on-one basketball in Tonsler Park.

■ The Government contends that the jury could have inferred from those three pieces of evidence that Parker's violation of § 841 did occur within 1000 feet of a playground. As the Tenth Circuit has recently held, however, we must focus not on whether the defendant possessed the drugs near a "playground" in the everyday sense of the word, but rather whether the possession took place near a "playground" *as Congress defined the term in the statute:*

> The term "playground" can have varied meanings. To some a playground could be a cow pasture; to others, a fenced-in surface of asphalt; and to still others, a playground is a place containing various apparatus. Congress chose to define the term in a specific manner and, consequently, proof must be adduced in order to sustain a jury's conclusion that a playground was involved.

*United States v. Smith,* 13 F.3d 380, 382 (10th Cir.1993).

To analyze the Government's argument, we must unpack Congress' four-part definition of "playground." The statute defines a playground as (1) an outdoor facility, (2) intended for recreation, (3) open to the public, *and* (4) containing three or more separate apparatus intended for the recreation of children (slides, swingsets, teeterboards, and so

forth). 21 U.S.C. § 860(d)(1). The Government contends—and we agree—that a reasonable jury could infer the first three parts of that definition from the mere fact that Tonsler Park is called a "park."

■ The fourth part (the three children's recreational apparatus), however, presents an insurmountable problem for the Government. At trial, the prosecution presented no testimony, photographs, or other evidence showing that Tonsler Park contained slides, swingsets, teeterboards, or other similar apparatus intended for the recreation of children. On appeal, Parker argues that the prosecution simply failed to muster the necessary evidence at trial. The Government's appellate brief maintains that the jury could have inferred from Jackson's testimony (that he had played basketball in Tonsler Park) that the park "had at least two separate baskets and a blacktop where kids could play hopscotch as well as other games." By the Government's theory, the two baskets plus the one blacktop constitute the requisite "three or more separate apparatus." 21 U.S.C. § 860(d)(1).

The Government's argument is too cute by half (or perhaps two-thirds). The jury could *not* reasonably have inferred that there were *two* basketball hoops in the park when Jackson testified only to playing "one-on-one" (*i.e.,* half-court) basketball there (as opposed to full-court basketball).

■ Furthermore, it is quite a stretch to consider a blacktop a "separate apparatus intended for the recreation of children." The Government assumes that there was "a blacktop" under the basketball hoop, that kids "could" play hopscotch and other games on that blacktop, and that the blacktop therefore constituted the third required recreational "apparatus" under the statute's definition of "playground." Those assumptions have no basis in the record evidence. They ignore the plain meaning of the statute's text, for a mere surface paved with blacktop—*e.g.,* an interstate highway—is surely not an "apparatus intended for the recreation of children." 21 U.S.C. § 860(d)(1). And they violate the age-old canon of *ejusdem generis* by

---

**9.** Parker has not challenged the accuracy of Detective Dean's odometer reading.

assuming that a blacktop is akin to the "sliding boards, swingsets, and teeterboards" that Congress specified in § 860(d)(1).[10]

The Government claims that it is merely asking us to view the evidence in the light most favorable to the prosecution, as we are required to do. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. But as Parker rightly notes, the Government is actually inviting us to go much further, to "make up" evidence not in the record below. Because we cannot properly do so, we must conclude that no rational trier of fact could have found beyond a reasonable doubt that Parker had possessed crack within 1000 feet of a "playground," as Congress defined that term.[11]

### C

■ We next must consider how best to dispose of the case on appeal, given that there was sufficient evidence to convict under § 841, but not under § 860. Section 841(a) is a lesser included offense of § 860(a). *See Smith,* 13 F.3d at 383; *United States v. Freyre–Lazaro,* 3 F.3d 1496, 1507 (11th Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 1385, 128 L.Ed.2d 59 (1994). Therefore, we are empowered, under 28 U.S.C. § 2106,[12] to reduce Parker's § 860 conviction, which was based on insufficient evidence, to a § 841 conviction. *See Smith,* 13 F.3d at 383 (explaining that such a reduction would not prejudice the defendant). Thus, we reverse the conviction under § 860 and remand the case to the district court with instructions to enter a judgment of conviction under § 841 and to resentence Parker. *See id.*

At resentencing, his total offense level will now be 28 (rather than 30), his criminal history category will still be II, and therefore the applicable guideline range will be between 87 and 108 months of imprisonment, somewhat less than his current 112–month prison term. Also, Parker's term of supervised release may be halved, from eight years to four years.

■ Contrary to the Government's suggestion on appeal, the district court on remand may *not* properly reimpose a two-level enhancement under U.S.S.G. § 2D1.2(a)(1), the sentencing guideline for drug offenses occurring near "protected locations." Such an enhancement could be imposed only if the sentencing court found by a preponderance of the evidence that Tonsler Park did indeed contain a "playground," as defined in § 860(d)(1)—a finding that would be clearly erroneous if based on the record evidence. *See United States v. Echevaria,* 995 F.2d 562, 563–64 (5th Cir.1993) (holding that a "protected location" under U.S.S.G. § 2D1.2(a)(1) is defined by the express terms of 21 U.S.C. § 860); *United States v. Robles,* 814 F.Supp. 1249, 1251 (E.D. Pa.) (same), *aff'd without op.,* 8 F.3d 813 (3d Cir.1993) (Table); *see also Smith,* 13 F.3d at 383. Furthermore, the prosecution has already been given one full and fair opportunity to offer whatever proof about Tonsler Park it could assemble. Having failed to seize that opportunity, the Government at resentencing

---

10. "[T]he principle of *ejusdem generis* [provides] that a general statutory term should be understood in light of the specific terms that surround it." *Hughey v. United States,* 495 U.S. 411, 419, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990). Here, the general term is "separate apparatus intended for the recreation of children," and the specific terms are "sliding boards," "swingsets," and "teeterboards." 21 U.S.C. § 860(d)(1).

11. Parker also argues that his § 860 conviction should be reversed because the trial judge committed plain error when he failed to instruct the jury on the statutory definition of the term "playground." Because we hold that the evidence was insufficient to sustain a conviction under § 860, we need not address Parker's jury-instruction argument.

12. Section 2106 provides that a Court of Appeals

> may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

28 U.S.C. § 2106; *see also* 18 U.S.C. § 3742(f)(1) ("If the court of appeals determines that the sentence ... was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate...."); Fed.R.Crim.P. 35(a) (describing the procedure for correcting a sentence on remand).

should not be allowed to introduce additional evidence to prove that Tonsler Park contained a playground. One bite at the apple is enough. *See supra* note 12; *cf. Burks v. United States*, 437 U.S. 1, 5–18, 98 S.Ct. 2141, 2144–51, 57 L.Ed.2d 1 (1978) (holding that, when a conviction is reversed for insufficiency of the evidence, the prosecution should not be given a second opportunity to supply evidence that it failed to muster in the first proceeding).

## IV

■ Finally, Parker argues that his constitutional rights to trial by jury and to due process were violated because the quantity of crack in his possession was determined by the sentencing judge, as a sentencing enhancement factor, under a preponderance standard of proof, rather than by the jury, as an element of the offense under 21 U.S.C. § 841, under the standard of proof beyond a reasonable doubt. He requests that the case be remanded for a new trial to allow a jury to decide the relevant quantity of crack. We have repeatedly and squarely rejected such arguments. *See, e.g., United States v. Mark*, 943 F.2d 444, 450 (4th Cir.1991); *United States v. Engleman*, 916 F.2d 182, 184 (4th Cir.1990); *United States v. Powell*, 886 F.2d 81, 85 (4th Cir.1989), *cert. denied*, 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990); *see also United States v. Lam Kwong–Wah*, 966 F.2d 682, 685–88 (D.C.Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992); *cf. McMillan v. Pennsylvania*, 477 U.S. 79, 84–93, 106 S.Ct. 2411, 2415–20, 91 L.Ed.2d 67 (1986). *But cf. Kinder v. United States*, — U.S. —, — – —, 112 S.Ct. 2290, 2291–92, 119 L.Ed.2d 214 (1992) (White, J., dissenting from a denial of certiorari) (questioning whether federal district courts should apply a higher standard of proof than a preponderance of the evidence, under the Sentencing Guidelines).

## V

Accordingly, we reverse the district court's judgment of conviction and sentence as to 21 U.S.C. § 860 and remand the case to the district court with instructions (a) to enter a judgment of conviction under 21 U.S.C. § 841, and (b) to resentence Parker in a manner consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*