**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-4768**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MELVIN LEON MYRICK, a/k/a Mel Skee,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:22-cr-00148-HEH-1)

Argued:  March 20, 2025                    Decided:  August 13, 2025

Before NIEMEYER, AGEE, and THACKER, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Thacker joined.

**ARGUED:**  Robert James Wagner, ROBERT J. WAGNER, PLC, Richmond, Virginia, for Appellant.  Daniel J. Honold, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Jessica D. Aber, United States Attorney, Kenneth R. Simon, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

After Melvin Myrick abandoned the car that he had been driving following a high-speed chase, law enforcement officers recovered cocaine, methamphetamine, drug paraphernalia, and three guns, along with other related items, from the car. A federal grand jury indicted him on October 4, 2022, for possession with intent to distribute 50 grams or more of "actual methamphetamine," and Myrick made his first appearance on that charge on October 14, 2022. On February 21, 2023, the grand jury issued a superseding indictment that added two new firearms charges, as well as cocaine to his drug charge. When his trial on the three charges began on March 22, 2023, Myrick filed a motion to dismiss the indictment on the ground that the government had violated the Speedy Trial Act, which requires generally that a trial be commenced within 70 days from the filing date of an indictment or the defendant's initial appearance. *See* 18 U.S.C. § 3161(c)(1). The Act, however, provides that certain periods of delay are to be excluded when calculating when a trial must commence. *See id.* § 3161(h). Finding that several periods of delay in this case were properly excluded under the Act, such that the trial had been timely commenced, the district court denied Myrick's motion.

The jury found Myrick guilty on all charges, and the district court sentenced him to 270 months' imprisonment, which fell at the bottom of the Sentencing Guidelines range calculated by the court.

On appeal, Myrick challenges mainly the denial of his Speedy Trial Act motion, but also aspects of his sentencing and the sufficiency of the evidence on one of the firearms charges. We affirm.

2

I

At about 2:00 a.m. on April 20, 2022, a Colonial Heights, Virginia, police officer attempted to stop a silver Nissan for a traffic infraction. The Nissan, however, failed to stop and sped away, reaching well over 85 miles per hour in a 35-miles-per-hour zone as the officer pursued. When, however, the officer became concerned for her own safety, she decided to end the pursuit. Nonetheless, shortly thereafter, she came upon the Nissan, which had crashed headfirst into a tree. When she arrived, she saw the driver exit and run around the rear of the vehicle. He briefly locked eyes with her before he attempted to open the front passenger door. When he was unable to do so, he ran into the woods and escaped.

Following a search of the vehicle, officers recovered 138 grams of methamphetamine, 53 grams of powder cocaine, two digital scales, three loaded semi-automatic handguns — a Glock model 22, another Glock model 22 with an extended magazine, and a 7.62 AK-style pistol — as well as a 7.62 shell casing on the front passenger seat. The officers also recovered Department of Motor Vehicle (DMV) paperwork in the name of Melvin Myrick, an Enterprise rental agreement indicating that the vehicle had been rented earlier that month by a woman later identified as Myrick's girlfriend, and two cell phones. The officers obtained a photo of Myrick from the DMV, and the officer who had pursued the silver Nissan immediately identified him as the person she had witnessed at the scene.

After state law enforcement arrested Myrick in connection with an unrelated offense, a federal grand jury returned an indictment on October 4, 2022, charging that on April 20, 2022, he had possessed with intent to distribute 50 grams or more of "actual

3

methamphetamine," in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). He was thereafter transferred to federal custody and made his initial appearance on the drug charge on October 14, 2022. The court appointed counsel for Myrick and scheduled his trial to begin on December 14, 2022, 61 days after his initial appearance.

Following his initial appearance, Myrick changed counsel, the parties filed motions for continuances, and Myrick filed two pretrial motions to suppress evidence, all resulting in periods of delays. Moreover, on February 21, 2023, the grand jury returned a superseding indictment, which added two firearms charges and cocaine to the existing drug charge. Ultimately, the court scheduled trial to begin on March 22, 2023, 159 days after Myrick's initial appearance.

On the date of trial and before the jury selection began, Myrick filed a pro se motion to dismiss his indictment under the Speedy Trial Act, arguing that his "Speedy Trial cut-off date" was actually March 21, 2023, the day before trial began. The court immediately addressed the issue, and both the government and counsel for Myrick agreed that the trial was commencing within the time required by the Act because there were periods of delay excludable under the Act that brought the trial date within 70 days of Myrick's initial appearance. The court denied Myrick's pro se motion, finding that the trial was commencing "within the Speedy Trial date."

Following a three-day trial, the jury convicted Myrick on all three counts.

The court then entered a written opinion explaining its denial of Myrick's motion to dismiss under the Speedy Trial Act. When Myrick subsequently changed counsel again, his new counsel filed a motion asking the court to reconsider its denial of his speedy trial

4

motion, focusing on a 16-day period between the hearing on his motions to suppress and the court's issuance of its written opinion denying both motions. Myrick argued that because the motions were actually denied *at the hearing*, the speedy trial clock resumed running then, and thus the trial was, he argued, too late. The court, however, rejected the argument, noting that it had not ruled on Myrick's suppression motions at the hearing "but rather noted Defendant's exceptions and took the matter under advisement with an opinion to follow." Thus, the court excluded the 62-day period from when the motions were filed to when it decided them in the written opinion, and it explained that, when that period of delay was combined with other periods of delay that Myrick conceded were properly excluded, the trial was timely under the Speedy Trial Act.

The court sentenced Myrick in December 2023. In advance of sentencing, the probation officer prepared a presentence report concluding that Myrick had a total offense level of 34, which, when coupled with his Criminal History Category IV, resulted in an advisory sentencing range of 270 to 322 months' imprisonment. At sentencing, Myrick objected to the presentence report, contending (1) that the purity of the methamphetamine recovered had not been sufficiently proven; (2) that he should not have received a reckless endangerment enhancement because he never placed anyone in a position of substantial risk of death or serious bodily injury; and (3) that he should not have been assigned two criminal history points for two 2022 Virginia convictions for contempt of court. In addition to interposing these objections, Myrick filed a motion for a downward departure or a downward variant sentence, arguing that Criminal History Category IV overrepresented

5

his criminal history and that policy considerations weighed against imposing an enhanced sentence based on methamphetamine purity.

At the sentencing hearing, the court rejected Myrick's arguments with respect to the reckless endangerment enhancement and the criminal history points for his contempt convictions. And as to his argument with respect to the purity of the methamphetamine, the court addressed it as part of its consideration of his motion for a variant sentence. During that discussion, the court noted that "actual" methamphetamine was more lethal than methamphetamine that was less pure and that the chemist's testimony at trial established that Myrick had possessed "at least 100 grams of pure methamphetamine." After considering the 18 U.S.C. § 3553(a) factors, the district court imposed a sentence at the bottom of the recommended Guidelines range — 270 months' imprisonment.

From the district court's judgment dated December 20, 2023, Myrick filed this appeal.

II

Myrick's main argument — which he identifies as "[t]he crux of this appeal" — is that he was denied his statutory right to a speedy trial and therefore that the district court erred in denying his motion to dismiss the indictment on that ground. Specifically, he argues that the district court "incorrectly tolled the speedy trial clock for the entire period between [his] filing of the suppression motions and the [court's] rendering of the written opinion — despite the fact that the district court clearly ruled against [him] during the hearing." Thus, he contends that the district court erroneously excluded the 16 days

6

between the hearing and its filing of the written opinion. In support of this challenge, he directs our attention to the portions of the hearing transcript where the district court twice agreed to note Myrick's "exceptions" for the record. And while he acknowledges that the clerk's notation in the minutes of the hearing indicated that the motions were taken under advisement, he contends that that minute entry was erroneous and of no legal consequence. If the court had decided Myrick's motions to suppress *at the hearing*, as he argues, the excluded period of delay would be shortened from 62 days to 46 days, and the trial would have been late under the Speedy Trial Act.

A

Before we address Myrick's argument, we confirm that the grand jury's return of the superseding indictment on February 21, 2023, did not restart the speedy trial clock *for the drug offense*. Before the district court and initially before us, Myrick contended that all three of his charges should have been dismissed under the Speedy Trial Act, without considering that he was charged with only the drug offense on October 4, 2022, and that the two charges alleging firearms offenses were not added to the case until February 21, 2023. But after we called for supplemental briefing, he essentially acknowledged that existing authority showed that his speedy trial motion could cover only the drug offense and not the firearms offenses. We agree.

The Speedy Trial Act does not directly address the effect of a superseding indictment on the speedy trial clock. But an analogous provision of the Act specifies that if the indictment is dismissed on the government's motion but then the government later

7

charges the defendant with "the same offense, or any offense required to be joined with that offense," the speedy trial clock for *that* type of offense is tied to the original indictment, although the time between the dismissal of the first indictment and the defendant's initial appearance on the new indictment is excluded from the 70-day limit.    18 U.S.C. § 3161(h)(5).    Given that the government's filing of a superseding indictment is functionally identical to its dismissal of an indictment followed immediately by its filing of a new indictment, it stands to reason that the same rule should apply to superseding indictments.    And, indeed, it appears that every court of appeals to have considered the issue has reached the same conclusion, recognizing that "the filing of a superseding indictment does not reset the speedy-trial clock for offenses charged, or required to be joined with those charged, in the original indictment."    *United States v. Young*, 528 F.3d 1294, 1296–97 (11th Cir. 2008) (collecting cases); *see also Sylvester v. United States*, 868 F.3d 503, 508–09 (6th Cir. 2017) (same).

Conversely, however, when a superseding indictment adds new and different charges to the case — charges not required by the Double Jeopardy Clause to be included with the original charge — the clock for *those* charges is tied to the filing of the superseding indictment, not the original indictment.    *See United States v. Lattany*, 982 F.2d 866, 872 n.7 (3d Cir. 1992); *see also Young*, 528 F.3d at 1295, 1298.    Thus, the speedy trial clock on the two firearms counts — which were substantively unrelated to the original drug charge and were added by the superseding indictment — started with Myrick's initial appearance on those charges on February 21, 2023, only about one month before Myrick's trial commenced.    His trial on those charges was thus certainly timely.

8

Accordingly, the question that we are left to address is whether Myrick's *drug charge* was subject to dismissal under the Speedy Trial Act, not his firearms charges.

## B

With the enactment of the Speedy Trial Act of 1974, Congress required that criminal cases be set for trial "at the earliest practicable time . . . so as to assure a speedy trial." 18 U.S.C. § 3161(a). And it made clear that its interests in enacting the Act were broader than the right conferred by the Sixth Amendment to a speedy trial, which primarily serves *the defendant's interests*. With the Speedy Trial Act, Congress intended "not just to benefit defendants but also to serve *the public interest* by, among other things, reducing defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment." *Zedner v. United States*, 547 U.S. 489, 501 (2006) (emphasis added). To serve those interests, the Act requires criminal trials to "commence within seventy days from the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Because this requirement is in the public interest, the defendant cannot prospectively waive it. *See Zedner*, 547 U.S. at 500–03.

Nonetheless, to provide the flexibility necessary to suit the individual characteristics of a given criminal case, "the Act includes a long and detailed list of periods of delay that are *excluded* in computing the time within which trial must start." *Zedner*, 547 U.S. at 497 (emphasis added) (citing 18 U.S.C. § 3161(h)). Thus, to determine whether a defendant's

9

trial was timely under the Speedy Trial Act, courts cannot simply count 70 days from the defendant's initial appearance; they must also apply the Act's exclusion provisions.

If, after applying the § 3161(h) excludable delays, the 70-day trial deadline is violated and the defendant files a motion to dismiss the charges before the trial commences, then the charges "shall be dismissed." 18 U.S.C. § 3162(a)(2). The district court, however, retains the discretion to make the dismissal with or without prejudice. *Id.*; *see also United States v. Velasquez*, 52 F.4th 133, 136 (4th Cir. 2022).

As relevant to the issue before us — the period of delay resulting from Myrick's motions to suppress — the Speedy Trial Act excludes any period of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). The Act also excludes any "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." *Id.* § 3161(h)(1)(H). Under these provisions, the speedy trial clock stops running upon *the filing* of any pretrial motion, "irrespective of whether it actually causes, or is expected to cause, delay in starting a trial." *United States v. Tinklenberg*, 563 U.S. 647, 650 (2011). And when the court holds a hearing on the motion, "the entire period from the filing of the motion to the conclusion of the hearing" is excluded. *United States v. Parker*, 30 F.3d 542, 546 (4th Cir. 1994). Thus, if the judge "finally disposes of the motion" by rendering a decision "orally in open court," then the clock resumes running following the hearing. *Id.* at 546 & n.1. But "[i]f the court does not dispose of the motion during the hearing, the [Act] permits the exclusion of an additional period — not to exceed 30 days — during

10

which the court holds the motion under advisement and continuing through the day the order ruling on the motion is entered." *United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996); *see also Parker*, 30 F.3d at 546.

In counting days for the Speedy Trial Act, the day of the event — *e.g.*, the date when a pretrial motion was filed — is not counted, and the counting begins with the next day to provide an accurate count of the days. *See Stoudenmire*, 74 F.3d at 63 (recognizing that "the day of the event that triggers the [speedy trial] clock . . . is not included in the calculation" and that "the clock begins to run the following day" (citing, *inter alia*, Fed. R. Crim. P. 45(a)). Thus, as an example, the number of days from April 5 to April 8 is not four — the 5th, 6th, 7th, and 8th — but three, recognizing that the period from April 5 to April 6 is one day, the period from April 6 to April 7 is the second day, and the period from April 7 to April 8 is the third day.

The question presented here is whether Myrick's *drug charge*, for which he made his initial appearance on October 14, 2022, was subject to dismissal under the Speedy Trial Act when his trial commenced on March 22, 2023. And this question requires an analysis of whether the excludable periods of delay reduced that total period to 70 days or less. Without exclusions, there were 159 days from Myrick's initial appearance to when trial began — October 14, 2022, to March 22, 2023. But there were also three periods of delay, which, according to the district court, brought the total "countable" period from Myrick's initial appearance to trial to less than 70 days, thus satisfying the Act's requirements.

*First*, on November 7, 2022, a new lawyer entered his appearance on behalf of Myrick and filed a motion to substitute himself as counsel. While that motion was pending,

he also filed an unopposed motion for "a continuance of between thirty to sixty days," explaining that he needed additional time to prepare pretrial motions. The district court granted Myrick's motion for a continuance on November 28, 2022, and set a new trial date of January 31, 2023. This first period of delay thus amounted to 21 days — from November 7, 2022, to November 28, 2022.

*Second*, on December 9, 2022, Myrick filed two pretrial motions to suppress evidence. After the government filed responses in early January 2023, the court promptly scheduled a hearing on the motions for January 24, 2023. At the hearing, the court clearly telegraphed that it intended to deny the motions — indeed, Myrick contends that it did then deny them. But, according to the court, it took the motions under advisement and then issued its written opinion denying the motions on February 9, 2023. This second period of delay was 46 days if the court actually decided the motions at the hearing — from December 9, 2022, to January 24, 2023 — or 62 days if it decided the motions with its written opinion — from December 9, 2022, to February 9, 2023.

*Third*, on March 10 and again on March 12, 2023, the parties filed motions in limine, which the court granted on March 17 from the bench, subsequently issuing a memorandum opinion explaining its decision. This third period of delay thus amounted to 7 days — from March 10, 2023, to March 17, 2023.

In sum, according to the position of the district court and the government, the three excludable periods of delay were 21 days, 62 days (relating to the motions to suppress), and 7 days, for a total of 90 days. And when 90 days are subtracted from the 159 days from Myrick's initial appearance to trial, the resulting 69 days comply with the Speedy

12

Trial Act, without the need to consider the applicability of any of the Act's other exclusions. But according to Myrick, the three excludable periods of delay were 21 days, 46 days, and 7 days, for a total of 74 days. And when 74 days are subtracted from the 159-day total, the resulting 85 days exceed the 70-day limit and therefore violate the Speedy Trial Act, assuming no other exclusions applied. The difference in positions thus turns on whether the district court decided, *i.e.*, finally disposed of, Myrick's motions to suppress at the hearing on January 24 or with its written opinion on February 9. *See* 18 U.S.C. § 3161(h)(1)(D), (H).

Myrick argues that the district court decided his suppression motions at the January 24, 2023 hearing and that it merely explained the reasoning for its rulings in the subsequent February 9, 2023 memorandum opinion. He bases this argument on the court's twice recognizing exceptions taken by his counsel in response to statements the court made during the hearing. Specifically, after the court expressed skepticism with the theory underlying Myrick's first motion, defense counsel asked the court to "[n]ote [his] exception," and the court responded, "Sure. I will." Similarly, regarding the second motion, the court indicated that it thought Myrick's argument was "grist for the cross-examination mill" but not a basis to exclude the evidence altogether. Again, defense counsel asked that his "exception" be noted, and the court responded, "Okay." While these exchanges suggest that Myrick's counsel took the court's statements as determinative, they do not support the conclusion that they were — *i.e.*, that the court actually ruled on the motions — especially when other indicators are considered.

13

First, when expressing skepticism to Myrick's counsel during the argument, the court never actually made a decision on those points and certainly not on the motions. Rather, it asserted positions that prompted counsel, in the exercise of caution not to waive anything, to take exception. But we could nowhere in the transcript find that the court actually denied the motions, *i.e.*, disposed of them finally. Second, immediately after the hearing concluded, court staff entered a minute entry on the docket stating that the suppression motions had been "taken under advisement by the Court" and that a memorandum opinion would follow, which did happen on February 9, 2023. And finally, in ruling on Myrick's motion to reconsider its denial of his speedy trial motion, the district court specifically *found as fact* that it had not ruled on Myrick's suppression motions at the January 24, 2023 hearing, "but rather noted Defendant's exceptions and took the matter under advisement with an opinion to follow."

Thus, to prevail on his claim that his motions were actually decided at the hearing, Myrick would need to establish that the court's factual finding on this issue was clearly erroneous. *See Stoudenmire*, 74 F.3d at 63. But the record does not support such a conclusion. Nowhere in the transcript of the January 24 hearing does the court ever state that the motions were denied, although the court did signal that it was *likely* to deny them, prompting Myrick's counsel to note exceptions for the record. But the fact that the court agreed to note exceptions did not create a ruling where there had not yet been one. Moreover, the minute notation entered on the docket immediately after the hearing notified the parties that the motions had been "taken under advisement by the Court," a fact later confirmed by the court's finding. This record, we conclude, amply supports the district

14

court's factual finding that it did not dispose of the two suppression motions at the hearing on January 24 but instead did so with its February 9, 2023 memorandum opinion and order.

Accordingly, the period from December 9, 2022, when Myrick filed his motions to suppress, to February 9, 2023, when the district court finally decided those motions — a period of 62 days — was properly excluded from the Speedy Trial Act calculation. With that excludable delay, as well as the other two excludable delays that Myrick has not challenged, Myrick's trial began within the 70-day requirement of the Speedy Trial Act. We therefore affirm the district court's denial of his motion to dismiss the indictment based on the Act.

## III

Myrick next contends that the district court committed procedural errors in sentencing him. We address each argument in order.

## A

First, Myrick contends that the district court erred in applying a two-level sentencing enhancement under U.S.S.G. § 3C1.2 for reckless endangerment. That provision applies "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Myrick argues that there was in his case nothing more than a basic car chase, emphasizing that we have recognized that "a vehicular flight, alone, does not necessarily justify an application of § 3C1.2" and that "[s]omething more is required." (Quoting *United States v. Burnley*, 988 F.3d 184, 191 (4th Cir. 2021)).

15

The district court did find that "something more," however.  It noted that, in response to a police officer's attempt to conduct a traffic stop, Myrick drove his car erratically "at approximately 100 miles an hour in a semi-residential area" that had a 35-miles-per-hour speed limit posted and that the officer "pursued him for quite a while." When, however, her car and steering wheel started shaking from the high speed at which she was driving, the officer decided, for her own safety, to end the pursuit.  Indeed, immediately thereafter, Myrick himself crashed his car into a tree.  We conclude that in these circumstances, the district court did not clearly err in finding that the officer faced a sufficiently substantial risk of death or serious injury to support application of the § 3C1.2 enhancement.  *See United States v. Shivers*, 56 F.4th 320, 324 (4th Cir. 2022) (recognizing that "the application of the § 3C1.2 enhancement is reviewed for clear error" and that we "will not find clear error unless on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed" (cleaned up)).

B

Second, Myrick contends that the district court erred in assigning him two criminal history points under U.S.S.G. § 4A1.2 for his Virginia convictions for contempt of court. That section provides that "[s]entences for all felony offenses are counted" and that sentences for most "misdemeanor and petty offenses are counted," except for a few offenses, *id.* § 4A1.2(c), one of which is "Contempt of court," *id.* § 4A1.2(c)(1).  Sentences for contempt of court are counted "only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was

16

similar to an instant offense." *Id.* Here, the state court records show that Myrick was found guilty on two counts of contempt based on his willful failure to appear for court and his disobedience of an officer of the court, in violation of Virginia Code § 18.2-456(A)(5)–(6), and that he was sentenced to time served — a period of nearly six months.

Myrick argues that during the nearly six-month period he was held in connection with the contempt charges, he was also "incarcerated while awaiting the disposition of [a] firearm charge." He thus maintains that "[t]he 'time-served' period of incarceration was not specifically imposed for the contempt charge[s] but, rather, was the result of the pending firearm charge that was withdrawn" and that "[t]he record fails to reflect that the sentencing judge specifically considered" how much time Myrick had served in pretrial detention when imposing the time-served sentence. He thus concludes that he was not sentenced to "a specific term of incarceration of greater than 30 days" and therefore that the contempt convictions should not have been counted.

The state court records, however, indicate that when Myrick was in custody from August 28, 2021, to February 15, 2022, it was in connection with two specified charges — namely, the two contempt offenses. Additionally, after he was released on bond on February 15, 2022, he pleaded *nolo contendere* to the two contempt charges on March 1, 2022, while the firearm charge was still pending. The record thus fails to support Myrick's assertion that his time-served sentence was not imposed for his contempt convictions. Accordingly, we conclude that the district court's assignment of the two criminal history points for those contempt convictions was not erroneous.

17

C

For his final arguments as to sentencing, Myrick contends first that the district court procedurally erred in how it classified the methamphetamine recovered from the car he was driving. While the methamphetamine was treated as "actual" (*i.e.*, pure), as distinct from a mixture or substance containing "methamphetamine," Myrick suggests that "the purity of the methamphetamine introduced in this case was never sufficiently . . . proven" to treat it as "actual" when calculating his Guidelines range. But, as the government points out, that is simply wrong. At trial, the government presented evidence that the 138 grams of methamphetamine taken from Myrick's car was tested at least twice and that the results showed that those 138 grams contained at least "100 grams of actual methamphetamine." Thus, Myrick was accountable for at least 100 grams of "Methamphetamine (actual)," which alone supported the base offense level of 30 that the court applied. *See* U.S.S.G. § 2D1.1(c)(5).

Myrick also contends that the district court failed adequately to explain why it rejected his request for a downward variance based on his public policy arguments pertaining to the difference in how the Guidelines treat "Methamphetamine (actual)" as compared to a mixture or substance containing methamphetamine. But his argument merely amounts to a disagreement with the court's expressed judgment. The court heard extensive arguments from both defense counsel and the government on Myrick's request for a variance based on the Guidelines' treatment of methamphetamine. And during the back-and-forth with Myrick's counsel in particular, the court made clear why it did not agree with Myrick's position on methamphetamine. *See United States v. Nance*, 957 F.3d

18

204, 213 (4th Cir. 2020). While counsel argued that there was no reason to apply a "10-to-1 ratio" between methamphetamine and actual methamphetamine, the court interjected to state that "[o]ne is more lethal than the other." And it added that it could not "imagine" varying downward on this basis "on the facts that we have before us." When Myrick's counsel referenced other district court decisions critiquing the methamphetamine disparity, the court stated that it did not "know what the facts were in those particular cases" and that it was "focusing only on the drugs at hand here, and the circumstances before [it]." Clearly, the court considered Myrick's argument during sentencing, and we conclude that it did not abuse its discretion in rejecting it. *See United States v. Williams*, 19 F.4th 374, 378 (4th Cir. 2021).

IV

Finally, Myrick contends that there was insufficient evidence for the jury to find that the firearms found in the car he was driving were possessed "in furtherance of a drug trafficking crime" and that, instead, they were "merely present with the drugs."

After Myrick crashed his car and fled, law enforcement found three loaded handguns, $5,000 worth of controlled substances, and two digital scales in the car. We have previously recognized that whether evidence establishes "the requisite nexus between the firearms and the drug trafficking crime . . . 'is ultimately a factual question'" and that "'the fact finder is free to consider the numerous ways in which a firearm might further or advance drug trafficking.'" *United States v. Moore*, 769 F.3d 264, 269–70 (4th Cir. 2014) (quoting *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002)). Among the several

19

factors that a factfinder might consider are the "accessibility of the firearm," "whether the gun [was] loaded," the "proximity" of the guns to the drugs, "and the time and circumstances under which the gun [was] found." *Lomax*, 293 F.3d at 705 (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000)).  We conclude that the circumstances here are sufficient to support the jury's finding that Myrick possessed the firearms in furtherance of this drug offense.

*    *    *

For all the reasons given, the judgment of the district court is

AFFIRMED.