**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Earl MATTHEWS,**
**Defendant–Appellant.**

No. 98–10499.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 2000

Filed Sept. 14, 2000

Amended Feb. 21, 2001

mind the limited role of an appellate court in a criminal appeal, we do not think that point was reached here." 321 F.2d at 795.

Franny A. Forsman, Federal Public Defender, Paul G. Turner (argued), Assistant Federal Public Defender, Las Vegas, Nevada, for the defendant-appellant.

Kathryn E. Landreth, United States Attorney, Peter Ko (argued), Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellee.

Before: B. FLETCHER, CANBY, and O'SCANNLAIN, Circuit Judges.

Opinion by Judge BETTY B. FLETCHER; Partial Concurrence and Partial Dissent by Judge O'SCANNLAIN.

## ORDER

The opinion filed September 14, 2000 and published at 226 F.3d 1075 (9th Cir. 2000) is amended as follows:

At page 1086 delete the following sentence and citation:

We therefore reverse and remand for resentencing on the record as it now stands. *See United States v. Hudson,* 129 F.3d 994, 995 (8th Cir.1997).

Replace the deleted sentence and citation with the following:

We therefore hold that the government in this case failed to meet its burden of proving that Matthews qualifies as an armed career criminal. Because the government failed to comply with our long-established precedents, we limit the scope of the district court's resentencing authority on remand. The government should have been aware of what it was required to introduce to meet its burden, *see Potter,* 895 F.2d at 1238; *Phillips,* 149 F.3d at 1033, and it patently failed to comply with a critical requirement. Therefore, we agree with many of our sister circuits that a party should not be able to do on remand what it has no excuse for failing to do the first time around. *See, e.g., United States v. Leonzo,* 50 F.3d 1086, 1088 (D.C.Cir. 1995) ("The government had the burdens of production and persuasion, and we see no reason why it should get a second bite at the apple. No special circumstances

justified, or even explained, the government's failure to sustain these burdens."); *United States v. Parker*, 30 F.3d 542, 553–54 (4th Cir.1994) ("[T]he prosecution has already been given one full and fair opportunity to offer whatever proof about Tonsler Park it could assemble. Having failed to seize that opportunity, the Government at resentencing should not be allowed to introduce additional evidence to prove that Tonsler Park contained a playground. One bite at the apple is enough."); *United States v. Dickler*, 64 F.3d 818, 832 (3d Cir.1995) (agreeing that when the prosecution fails to meets its burden of persuasion or production, "its case should ordinarily have to stand or fall on the record it makes the first time around" but allowing an exception because the government "tendered a persuasive reason why fairness so requires"); *United States v. Monroe*, 978 F.2d 433, 435–36 (8th Cir.1992). Here, the government does not deserve a second bite of the apple. The defendant made patently clear to the district court and the government what our precedents require. The government did not seek to cure the deficiencies in its proof. To allow the government to reopen proceedings at this stage would be to waste court resources. Parties before district courts are obliged to prepare their cases in a thorough manner. When a party's initial victory is reversed by the appellate court because the party failed to meet this obligation, we are obliged to bring to an end the wasteful process. We therefore reverse and remand for resentencing on the record as it now stands.[9] *See United States v. Hudson*, 129 F.3d 994, 995 (8th Cir.1997). We do not suggest that in all cases where the government's proof has failed the court must always resentence without reopening the record. In those cases where the government demonstrates a persuasive reason why fairness so requires, this court has the discretion to permit the government to introduce the omitted evidence on remand; where the record is unclear, we may remand with instructions to the district court to permit the government to supplement the record only if it makes the requisite persuasive showing in the district court. *See Dickler*, 64 F.3d at 832. Here, however, the record is abundantly clear and adverse to the government.

9. The dissent complains that this defendant has received a "sentencing windfall" just because the government failed to meet its burden of proving the defendant's past convictions. It is a "windfall" only in the sense that another similarly situated defendant might face a probation officer and a prosecutor who undertake a proper investigation in the first instance and meet the burden of proof.

## ORDER

The partial concurrence and partial dissent by Judge O'Scannlain filed on September 14, 2000, and published at 226 F.3d 1075, 1086 (9th Cir.2000) is amended as follows:

At pages 1086–87 delete the partial concurrence/partial dissent in its entirety. Replace the deleted partial concurrence/partial dissent with the following:

I concur in the court's affirmance of Matthews's conviction, but I must respectfully dissent from its disposition of the sentencing issue in this case. Even assuming that the district court erred in applying the Armed Career Criminal ("ACC") enhancement of 18 U.S.C. § 924(e),[1] I cannot concur in the drastic

1. Even assuming that the district court erred in applying the enhancement, the majority's analysis of this issue is overbroad and inconsistent with our prior precedents.

In emphasizing the need for the district court to review the statute of conviction, the majority opinion implies that *Taylor* requires a strict categorical approach when evaluating whether a burglary conviction is a qualifying conviction. *See Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (describing as "categorical" an approach that "requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense"). This implication is precluded by our past recognition that under *Taylor*'s "refinement of the categorical approach" or "modified categorical approach," a sentencing court may look beyond the statute and fact of conviction in appropriate cases. *See United States v. Parker*, 5 F.3d 1322, 1326 (9th Cir.1993).

step of remanding for resentencing on the record as it now stands, i.e., barring the trial court from further developing the record as appropriate. There is simply no reason in this case for deviating from our "general practice" of allowing the district court to conduct further appropriate proceedings on remand for purposes of resentencing. *United States v. Washington,* 172 F.3d 1116, 1118 (9th Cir.1999); *see also United States v. Parrilla,* 114 F.3d 124, 128 (9th Cir.1997) ("On remand, the district court should conduct further proceedings as may be necessary to enable it to make appropriate findings to resolve the factual dispute...."); *United States v. Hedberg,* 902 F.2d 1427, 1429 (9th Cir. 1990) (remanding for de novo sentencing proceedings).

The Eighth Circuit opinion cited by the majority, *United States v. Hudson,* 129 F.3d 994 (8th Cir.1997), is rather cryptic and not very helpful in justifying this highly unusual step. The *Hudson* court supported its closing of the record by claiming that "we have clearly stated the governing principles as to when and how disputed sentencing facts must be proved." *Id.* at 995. The D.C. and Fourth Circuit cases cited by the majority did not involve statutes as complex as the ACC provision. Instead, those cases involved failures by the prosecution to establish facts specified by the relevant statutes, where there was no uncertainty as to the statutes' requirements. In *United States v. Leonzo,* 50 F.3d 1086, 1088 (D.C.Cir.1995), the government did not introduce relevant evidence of the loss caused by the defendant's bank fraud. In *United States v. Parker,* 30 F.3d 542, 551–53 (4th Cir.1994), the government sought to enhance the defendant's sentence by charging him with distribution of drugs within 1000 feet of a playground, but failed to prove that the property met the statute's definition of "playground."

The majority in this case, having oversimplified matters greatly, may regard the principles governing application of the ACC enhancement as "clearly stated" by prior case law, but more careful examination of the issue discloses that these principles are quite complex, have spawned a great deal of litigation in the lower courts, and are far from "clearly stated." Accordingly, I see no reason to punish the government by prohibiting it from completing its showing on remand to establish the applicability of the ACC enhancement with even greater certainty.

The majority's new exception to its new rule will provide little guidance to future panels, and little comfort to those of us who seek predictability and consistency in sentencing. This case by case approach contradicts the goals of both the ACC enhancement and the Sentencing Guidelines: The ACC enhancement was enacted in order to provide mandatory minimum sentences for armed career criminals. *See Sweeten,* 933 F.2d at 770. The Sentencing Guidelines were established in large part to reduce unwarranted sentencing disparities. *See United States v. Banuelos–Rodriguez,* 215 F.3d 969, 976 (9th Cir.2000) (en banc). In allowing Matthews to escape imposition of the ACC enhancement simply because of the fortuity (from Matthews's perspective) that his probation officer prepared a less-than-complete PSR, the majority flouts congressional intent with respect to both the ACC enhancement and the Sentencing Guidelines.

The process of criminal sentencing is not a game between the government and criminal defendants, in which one side or the other gets penalized for unskillful play. The goal of sentencing is to determine the most appropriate sentence in light of the

Indeed, our cases provide district courts with significant latitude to look beyond the mere fact of conviction and statute of conviction when evaluating the § 924(e) qualifying status of prior burglary convictions (the only types of convictions at issue in this case). *See*

*United States v. Bonat,* 106 F.3d 1472, 1476–77 (9th Cir.1997); *United States v. Alvarez,* 972 F.2d 1000, 1005–07 (9th Cir.1992); *United States v. O'Neal,* 937 F.2d 1369, 1373–74 (9th Cir.1991); *United States v. Sweeten,* 933 F.2d 765, 768–72 (1991).

characteristics of the crime and the defendant. If Matthews is an "armed career criminal" under the ACC statute (and the record makes clear that he is), then he should be sentenced as one. Because I cannot agree to bestowing a sentencing windfall upon a defendant with a long and extensive history of committing violent crimes, especially when equally culpable but less fortunate defendants have been subjected to the enhancement, I must respectfully dissent.

## OPINION

BETTY B. FLETCHER, Circuit Judge:

James Earl Matthews was indicted and tried on three counts of being a felon in possession of a firearm and two counts of unlawful possession of stolen firearms. After a jury trial, he was acquitted of the latter two charges, and the district judge dismissed two of the three felon in possession of a firearm counts as multiplicitous. The Presentence Investigative Report ("PSI") recommended that Matthews be sentenced for the remaining gun possession conviction as an Armed Career Criminal ("ACC") under the United States Sentencing Guidelines ("U.S.S.G.") § 4B1.4(b)(3)(B) (1997). Despite an objection by his counsel that Matthews's prior burglary and attempted burglary convictions were not qualifying crimes, Matthews was sentenced as an ACC to 280 months in prison. He appeals both his underlying conviction and his sentence.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm the district court on all of the claims challenging the underlying conviction. We reverse on the sentencing issue and remand for resentencing on the existing record.

### I.

This case arises out of a transaction between James Earl Matthews and a paid informant for the Bureau of Alcohol, Tobacco and Firearms ("ATF") named Chris Davis. Davis testified at trial that he received a call from Matthews in late January 1998, telling him that he had some firearms for sale. In response to this contact, Davis called the agent with whom he worked at the ATF, Agent Darren Gil, who expressed interest in setting up a controlled purchase of the weapons. Davis and Matthews then engaged in a number of phone calls and held two in-person meetings in furtherance of the firearms sale, with Davis telling Matthews he would find a buyer for the weapons.

On January 25, 1998, Davis met Matthews at an E–Z–8 Motel in Las Vegas, Nevada. Although Davis could not identify the room number at trial, he testified that he accompanied Matthews to the room and was shown "some TVs, VCRs, [a] 9 millimeter [pistol] and a .380 [semiautomatic firearm], some cameras, watches." Matthews also told Davis he had an assault rifle for sale. Davis purchased two TVs at the motel room in order to "show him that [he] was interested," and explained that he would contact Matthews regarding the guns.

Two days later, on January 27, Davis engaged in a telephone conversation with Matthews, which was recorded by Agent Gil. During the call, Davis asked what kind of weapons Matthews had available and how much they would cost. On January 28, Davis told Matthews that he had located a buyer for the weapons. When Matthews responded that he was going to drop the guns off at Davis' house, Davis tried to stall him for time, since Agent Gil had not yet arranged for their reception. On January 29, Matthews called Davis and explained that he was on his way to Davis' house with the firearms. This call was not recorded, since Matthews had placed the call and Davis did not have recording equipment at his home. Later that evening, Matthews arrived at Davis' house with a number of weapons. Two of Davis' friends, Scott Brynski and Mark Farrington, were present when Matthews arrived. Both had been told about the purpose of

Matthews's visit, and Farrington was introduced to Matthews. Matthews gave Davis three guns wrapped in a blanket; Davis testified that he saw the barrel of a rifle protruding from the blanket and took the whole bundle into his house, where he stored the weapons for pickup by Agent Gil. At trial, Davis identified a Llama .380 semiautomatic pistol, a 9 millimeter pistol, and a Thompson submachine gun as the guns that Matthews brought to his house. Although Davis did not identify the weapons by serial number, he was able to describe the type and condition of the firearms when they arrived at his house. All of the firearms were admitted into evidence without objection. Sometime after Matthews left, Davis paged Agent Gil to explain what had happened.

Agent Gil testified that he took the firearms from Davis on January 30, 1998. He affixed evidence tags to them, placed them in an envelope, and took them back to the ATF Field Office in Las Vegas for fingerprint testing. On February 2, 1998, Agent Gil met with Matthews at a time arranged by Davis. The meeting, which took place at a restaurant, was monitored by both a recording and a transmitting device. After Agent Gil paid him for the firearms with marked bills, Matthews left the restaurant and was arrested by ATF agents.

Matthews was indicted for being a felon in possession of firearms: count one of the superseding indictment charged him with possession of a Llama .380 semiautomatic pistol, count two charged him with possession of a 9 millimeter pistol, and count three charged him with possession of a Thompson submachine gun. Matthews was also charged with two counts of possession of stolen firearms: count four of the indictment was for the Llama .380, and count five was for the Thompson submachine gun. Matthews objected to the indictment, arguing that the three counts for felony possession of firearms were multiplicitous. The district court allowed the Government to pursue all five counts at trial.

During closing argument, the defense pointed out that the two individuals, Brynski and Farrington, named by Davis as having been at his home when Matthews delivered the firearms, were not called as witnesses for the Government. Defense counsel also targeted the testimony of the Government's fingerprint expert, Darrell Klasey. Klasey had explained on direct examination that fingerprints are recoverable from weapons in only 10 to 11 percent of the cases he investigates, thus indicating that the lack of fingerprints on the guns Matthews was charged with possessing was not significant. To refute this implication, the defense urged the jury in closing to "worry about that," asking rhetorically why no prints were left if Matthews was a gun dealer. The Government responded in rebuttal, characterizing defense counsel's argument as:

[An o]ctopus squirting ink. A retired prosecutor I know likes to call this kind of an argument an octopus squirting ink. They're trying to get away, so they gotta hide what they're doing, they gotta hide all the facts, cloud the facts, throw up all kinds of dirt, squirt the ink.

Regarding the Government's failure to call the eyewitnesses from Davis' home the night of the weapons delivery, Government counsel made the following statement in rebuttal:

[Y]ou heard Mr. Davis's testimony. Mr. Farrington, as soon as Mr. Matthews or the car drove up, got out and walked out the back door. He didn't see anything. He wasn't in position to see anything. Why didn't we call Mr. Brenski [sic]? Maybe that's my fault. We could have called him to the stand, could have put him up there and he would have said probably the same thing that Mr. Davis said.

Finally, in response to the defense's discussion of the fingerprint expert, the Government stated:

Why did we call a fingerprint examiner to prove what we don't have? Why did

we call a fingerprint examiner? Because you have to battle human experience. Everybody has watched T.V., everybody has watched movies. Everybody thinks any time you touch something you're going to leave a whole host of fingerprints all over the place. And suddenly you have this fingerprint expert, this guy who does this for a living who tells you in his experience on firearms, you get fingerprints 10 or 11 percent of the time. I don't know about you, but the first time I heard that I was shocked. 10 or 11 percent of the time? That's not what I saw on Matlock, that's not what I saw on Perry Mason, that's not what I saw on Law and Order. These fingerprints, they show up all the time. How can this be? That's why you call in a fingerprint examiner to explain.

The jury found Matthews guilty of all three felony possession counts, and acquitted him on counts four and five, unlawful possession of stolen firearms. The defense filed a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 or a new trial under Federal Rule of Criminal Procedure 33, arguing insufficiency of the evidence and renewing its objection to the multiplicitous charges in the indictment. In response, the court rejected the motion for acquittal and for a new trial, but dismissed counts two and three as multiplicitous.

Matthews's Presentence Investigation Report calculated his base offense level as 24, added one point because there were three guns involved in the crime, and two points because the crime involved firearms that had been stolen. Most importantly, the PSI identified Matthews as an Armed Career Criminal, qualifying him for an offense level of 33 because he was at least 18 years old at the time of the crime; the offense charged was a qualifying felony; and he had at least three prior qualifying felonies. The Armed Career Criminal identification increased the sentence for which Matthews was eligible from 130–162

months to 235–293 months. The defense filed written objections to the PSI, arguing that three of the four prior convictions the PSI identified as "violent felonies" were burglaries or attempted burglaries that did not involve the use of force, threat of force or use of weapons as required by the Armed Career Criminal Act, 18 U.S.C. § 924(e). Without evidence that three of the four priors included the use or threat of force, Matthews argued, the burglaries and attempted burglaries could not be used in qualifying him as an Armed Career Criminal. At the sentencing hearing, defense counsel objected to the lack of certified copies of the judgments in the predicate felonies. No additional evidence was proffered at sentencing: the PSI with addendum, defense objections, and Government response were the only items considered. The district court overruled the defense's objections to the PSI and sentenced Matthews as an Armed Career Criminal, to 280 months in prison. Matthews timely appealed, challenging, *inter alia*, the sufficiency of the evidence for the underlying offense, the introduction of "other crimes" evidence, the impact on the jury at trial of the multiplicitous indictment, improper prosecutorial vouching, and his qualification as an Armed Career Criminal.

## A. *Sufficiency of the Evidence*

Matthews argues that there was not sufficient evidence to support the jury verdict finding him guilty of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). There is sufficient evidence to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also United States v. Symington*, 195 F.3d 1080, 1088–89 (9th Cir.1999). The elements of this crime are: (1) the defendant knowingly possessed the firearm described

in the indictment; (2) the firearm described in the indictment had been shipped or transported from one state to another; and (3) at the time the defendant possessed the firearm described in the indictment, he had been convicted of a crime punishable by imprisonment for a term exceeding one year. 18 U.S.C. § 922(g)(1), *Ninth Circuit Manual of Model Jury Instructions—Criminal,* Sec. 8.19.16 (1987). The parties stipulated to the second and third elements of the crime. The issue on appeal, therefore, is whether sufficient evidence was introduced at trial to allow a rational jury to conclude beyond a reasonable doubt that Matthews knowingly possessed the firearm described in count one of the indictment.[1]

Matthews focuses his sufficiency challenge on the fact that the only direct evidence of Matthews's possession of the firearms came from the trial testimony of Chris Davis. Because Davis was a paid ATF informant, and because his explanation regarding how he became an informant was somewhat unclear,[2] Matthews suggests that the testimony Davis provided in his case was tainted enough to make it "insubstantial on its face," thus requiring corroboration. While it is true that this court has warned that uncorroborated, facially "incredible or unsubstantial" testimony may be insufficient to support a guilty verdict, *Lyda v. United States,* 321 F.2d 788, 794–95 (9th Cir.1963) (internal quotation and citation omitted), that warn-

ing does not apply to this case. Davis' testimony was not incredible or insubstantial, either facially or on deeper analysis.

Davis testified to a number of phone calls and two meetings with Matthews, during which Davis saw Matthews in possession of weapons. While it is true that no other eyewitness testified to seeing Matthews with the firearms, several of the phone calls between Davis and Matthews were recorded and monitored, and included circumstantial corroboration of Davis' testimony. For example, the record reveals that during one of the monitored phone calls, Matthews stated that he had a 9 millimeter, a .380, and a Thompson machine gun. While these statements are not direct evidence of possession, they are circumstantial evidence that tends to corroborate Davis' own eyewitness accounts of the weapons having been in Matthews possession.[3] In addition, Agent Gil testified to the recorded conversation he had with Matthews at a Las Vegas restaurant, which included an exchange concerning the price the undercover agent would pay for the guns Matthews delivered to Davis. While Matthews nowhere explicitly states on the recordings that he had the guns described in the indictment in his possession, Gil explained that Matthews did discuss their prices, accept payment for them, and ultimately stated that he could obtain other guns for sale.[4] Matthews's own re-

---

**1.** Since the second two counts were dismissed, Matthews was sentenced only for possession of the Llama .380 pistol. Because the evidence introduced by the Government concerned the firearms as a group, we refer to them in the plural.

**2.** When asked what motivated him to become an ATF informant, Davis replied "because I was using drugs at the time and wanted to stop." He further stated that he did not have any criminal charges outstanding against him at the time, and that he simply looked for the ATF listing in the phone book, called, and signed up as an informant. While this testimony is somewhat odd, it did not render Davis' testimony insubstantial or incredible on its face.

**3.** While we do not face the issue in this appeal, we note that the First Circuit has held that eyewitness testimony of a defendant having been in possession of a firearm is sufficient in itself to uphold a jury verdict under 18 U.S.C. § 922(g), even when the firearm itself has not been recovered. *United States v. Hernandez,* 146 F.3d 30, 32–33 (1st Cir.1998).

**4.** In response to a question by Agent Gil regarding the availability of additional guns, Matthews replied, "I got, uh, thirty thirty carbine ... I think I might know where some more are. But I don't have any ..."

corded words are circumstantial evidence of his possession of the guns.

We have held that "the uncorroborated testimony of an informer is sufficient to sustain a conviction" when it is not unbelievable or incredible. *United States v. Paduano*, 549 F.2d 145, 150 (9th Cir.1977). Here, key aspects of the informant's testimony were corroborated by the undercover officer. While it is true that Davis supplied the only direct evidence linking Matthews to actual possession of the firearms, there was a good deal of indirect, circumstantial evidence making the same link. In sum, the challenges Matthews mounts to the sufficiency of the evidence regarding his possession of the firearms concern the weight and credibility of the evidence. "[I]t is the jury's role, not ours, to assess credibility of witnesses and resolve conflicts in the evidence," *United States v. Kenny*, 645 F.2d 1323, 1346 (9th Cir.1981). There certainly was enough evidence for a rational jury to conclude that the Government had proved Matthews possessed the firearms described in the indictment beyond a reasonable doubt.[5]

### B. *"Other Crimes" Evidence*

Matthews argues that the court abused its discretion by allowing testimony to be introduced regarding a host of items that were in Matthews's hotel room the day that Davis met him there to discuss guns. His challenge rests on the argument that such testimony amounted to "other crimes" evidence that should have been excluded under Federal Rule of Evidence 404(b).

▉ We review the admission of evidence under Federal Rule of Evidence 404(b) for abuse of discretion. *See United States v. Bracy*, 67 F.3d 1421, 1432 (9th Cir.1995). If no objection is made to the admission of the evidence, however, the trial court's decision is reviewed for plain error. *See id.* Furthermore, this court determines de novo whether the evidence falls within the scope of Federal Rule of Evidence 404(b). *See United States v. Rrapi*, 175 F.3d 742, 748 (9th Cir.), *cert. denied*, 528 U.S. 912, 120 S.Ct. 261, 145 L.Ed.2d 219 (1999).

Davis testified that there were "weapons, cameras, TVs, VCRs" for sale in Matthews's hotel room, and that there was a "bag" of watches in the room as well. Although defense counsel made no objection to Davis' testimony, the district court responded to his statements by giving a limiting instruction to the jury regarding the testimony:

Ladies and gentlemen, let me instruct you at this time. Testimony that's been received concerning items other than the firearms in question is not evidence that relates to the specific charge. In other words, the defendant, Mr. Matthews, is not charged with any violation concerning jewelry or televisions, and you're not called upon to return a verdict as to anything involving such items of property, only as regards the firearms. But this evidence is received and may be considered by you only as it bears upon

5. Matthews also challenges the chain of custody connecting the guns Davis allegedly received from Matthews to the guns admitted into evidence in his trial. The challenge Matthews advances amounts to a theoretical one: Matthews notes that Davis cannot identify the guns by serial number, and explains that "[e]vidence tags can, of course, become disengaged from an object and be removed and transferred to another object or otherwise modified." Matthews does not forward any evidence that these things happened. At trial, Davis testified that he recognized the guns as those Matthews delivered, and he explained that the guns were stored until Agent Gil retrieved them. Agent Gil testified that he placed evidence tags on the guns, placed them in an envelope, and transported them back to the ATF field office. Fingerprint Examiner Klasey testified that he performed tests on the guns, and explained that he could identify the evidence because his signature was on the evidence tags. Furthermore, the guns were admitted into evidence without objection. Finding no evidence of a defect in the chain of custody in this case, we reject Matthews challenge on this point.

the defendant's motive, opportunity, intent, preparation, plan or knowledge or absence of mistake. And I wanted you to understand that at this point.

On appeal, the defense argues that (1) because the judge treated Davis' testimony as 404(b) material, the Government should have placed the defense on notice as to its content pursuant to the Joint Discovery Statement in the case; and (2) that it was an abuse of discretion for the judge to fail to make a record finding under Federal Rule of Evidence 403 that the probative value of this testimony outweighed its prejudicial impact.

 This court has generally concluded that "other act" evidence need not meet the requirements of Rule 404(b) when it is "inextricably intertwined" with the evidence concerning the crime with which the defendant was charged. *United States v. Soliman,* 813 F.2d 277, 279 (9th Cir.1987) (internal quotations and citations omitted). To clarify, this court has explained that there are two categories of cases in which "other acts" evidence will be treated as too closely related to the charged crime to require 404(b) treatment. First, the court has "allowed evidence to be admitted because it constitutes a part of the transaction that serves as the basis for the criminal charge." *United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1012 (9th Cir. 1995). Second, the court has allowed such evidence "when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *See id.* at 1012–13. In this case, the Government argues that Davis testified to the items in Matthews's room as a way of explaining the "transaction" for which Matthews was charged: possession of firearms, and possession of stolen firearms. He explained what he saw in the room as a means to set the scene for the firearms deal.

 We are unpersuaded by this analysis. Davis need not have catalogued all of the items present in Matthews's room in order to discuss the details of the weapons deal. Indeed, the main purpose of this evidence appears to have been to portray Matthews as an individual who deals in goods that are presumably stolen. We find, therefore, that the Government was under an obligation to notify Matthews of its intent to introduce such evidence, pursuant to the parties' joint discovery statement. However, the district court's failure to strike the material on the basis of the Government's notice error does not amount to plain error. The Supreme Court has stated that in order to qualify as plain error, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal citations omitted). In addition, "the court [of appeals] should not exercise [its] discretion [to correct the error] unless the error '"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" *Id.* (internal citations omitted). In this case, the error was not "plain," since the testimony could plausibly have been viewed as "inextricably intertwined" with the charged offense and the error did not affect the substantial rights of the defendant. Indeed, the defendant was acquitted on the stolen weapons counts, indicating that the most likely prejudicial effect of the evidence—that the jury would conclude all of the items within Matthews's possession were stolen—had minimal impact. Finally, the possible prejudicial impact of the statement was lessened by the district court's sua sponte limiting instruction regarding the testimony.

C. *Prejudicial Impact of Multiplicitous Indictment*

 Matthews argues that his trial before the jury on multiplicitous counts prejudiced him and rendered his trial fundamentally unfair. Whether an indictment is multiplicitous is a question of law reviewed de novo. *United States v. McKittrick,* 142 F.3d 1170, 1176 (9th Cir.1998), *cert. denied,* 525 U.S. 1072, 119 S.Ct. 806,

142 L.Ed.2d 667 (1999). The denial of a defendant's motion for a new trial is reviewed for an abuse of discretion. *United States v. Peterson*, 140 F.3d 819, 821 (9th Cir.1998).

Matthews made a pre-trial oral motion seeking dismissal of two of the three counts for felony possession of firearms, or consolidation of all three, since all of those counts concerned the same occurrence. The court denied the motion and allowed the jury to consider all three possession counts. After the jury found Matthews guilty of all three possession counts, Matthews renewed his objection to the charging instrument, objecting that the three separate counts had "created a negative psychological effect" on the jury. The district court denied this motion, but dismissed counts two and three as multiplicitous before sentencing. Therefore, the only question presented on appeal, is whether the dismissal of the multiplicitous counts after trial but before sentencing was an adequate remedy.

" 'The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense.' " *United States v. Galvan*, 949 F.2d 777, 781 (5th Cir.1991) (internal citations omitted). By dismissing two of the three counts before sentencing, the district court ensured that Matthews did not face more than one sentence for the felony possession convictions. While a new trial might theoretically be available as a remedy in circumstances like these— where the jury considered a multiplicitous indictment but the defendant was sentenced under only one of the convictions— we have rejected such a remedy where "the [G]overnment would have introduced exactly the same evidence had the indictment contained only one count" of the charged offense. *United States v. Nash*, 115 F.3d 1431, 1438 (9th Cir.1997), *cert. denied*, 522 U.S. 1117, 118 S.Ct. 1054, 140 L.Ed.2d 117 (1998). This case is easily resolved under the *Nash* rule, since the Government would have presented evidence concerning all three guns, no matter how the possession charge was packaged in the indictment.

### D. *Prosecutorial Misconduct*

■ On appeal, Matthews objects to three areas of commentary made by the Government during its closing argument. None of the comments provoked an objection by defense counsel at trial. When there is no objection to comments made during closing arguments, the plain error standard applies. *See United States v. Leon–Reyes*, 177 F.3d 816, 821 (9th Cir. 1999); *United States v. Cooper*, 173 F.3d 1192, 1203 (9th Cir.), *cert. denied*, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 408 (1999).

■ Matthews first argues that the Government improperly vouched for a witness who did not testify. Responding to the defense's observation in its closing argument that the Government had failed to call the individuals who were allegedly at Davis' home and met Matthews when he delivered the firearms on January 29, 1998, the Government said:

> Why didn't we call Mr. Brenske [sic]? Maybe that's my fault. We could have called him to the stand, could have put him up there and he would have said probably the same thing that Mr. Davis said. It's redundant at that point. You have the tapes that corroborate this.

The Government conceded that this argument "clearly is improper." Both parties are correct: we have held that "prosecutorial vouching, which consists of ... suggesting that information not presented to the jury supports the witnesses' testimony, is improper." *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir.1991). Moreover, "[v]ouching is especially problematic in cases where the credibility of the witnesses is crucial," such as in this case. *Id.* However, in light of the extensive evidence concerning Matthews's guilt, including the eyewitness testimony of possession by Davis, the circumstantial evidence supplied

by Agent Gil, as well as the circumstantial evidence of possession included in the tapes, we find no prejudice.

 Next, Matthews argues that the Government attorney improperly vouched for the credibility of the fingerprint expert by emphasizing the credentials of the expert (referring to him as "this guy who does this for a living") and inserting his personal reaction to the information presented to the jury—that fingerprint evidence is recoverable only 10 to 11 percent of the time ("the first time I heard that I was shocked"). We conclude that it was not improper to refer to the fingerprint examiner as "this guy who does this for a living." This fact was in evidence, and the government could properly refer to it in closing. *See United States v. Frederick*, 78 F.3d 1370, 1378 (9th Cir.1996). The prosecutor's comment that he was "shocked" is more problematic. The government had introduced evidence regarding the incidence of fingerprints being lifted from a gun, and it was improper for the prosecutor to express his reaction to this evidence in front of the jury. *See United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir.1992) ("A prosecutor has no business telling the jury his individual impressions of the evidence."). It is less clear, however, whether this comment amounted to placing the prestige of the government behind the examiner's testimony, or constituted a personal assurance of the examiner's veracity. *See United States v. Roberts*, 618 F.2d 530, 533 (9th Cir.1980). In any event, because the evidence against Matthews was very substantial, the prosecutor's statement would not compel reversal under the plain error standard, even if we considered the statement to be vouching. The error, if any, did not affect Matthews's substantial rights. *See Olano*, 507 U.S. at 732, 113 S.Ct. 1770.

 Finally, Matthews argues that the prosecution improperly disparaged the defense by characterizing the defense argument as an "[o]ctopus squirting ink," and asserting, somewhat ambiguously, that "[t]hey're trying to get away, so they gotta hide what they're doing, they gotta hide all the facts, cloud the facts, throw up all kinds of dirt, squirt the ink." It is unclear whether this commentary refers to defense *counsel*, as Matthews asserts, or to the defense *argument*, as the Government insists. Examining a case in which the prosecutor used words such as "stupid" and "trash," this court held that "[a] lawyer is entitled to characterize an argument with an epithet as well as a rebuttal." *Williams v. Borg*, 139 F.3d 737, 744–45 (9th Cir.), *cert. denied*, 525 U.S. 937, 119 S.Ct. 353, 142 L.Ed.2d 292 (1998). The same panel also concluded that the prosecution had acted improperly by attacking defense counsel, but found no reversible error because the evidence supporting conviction was overwhelming. *Id.*

In this case, the Government walked—and may have overstepped—the line by insinuating that defense counsel was trying to hide the truth. Since Matthews did not object to this commentary at trial, however, we must examine whether the statements had an impact on Matthews's substantial rights. The statements made in this case are unworthy of a representative of our government, but under all the circumstances of this case, they are not plain error.

E. *Evaluation of Prior Convictions for Sentence Enhancement*

 The Presentence Investigative Report recommended that Matthews be sentenced as an Armed Career Criminal ("ACC") pursuant to U.S.S.G. section 4B1.4(b)(3)(B), which implements the ACC statute, 18 U.S.C. § 924(e). *See* U.S.S.G. § 4B1.4(b)(3)(B) and accompanying commentary. Defendants with three previous convictions for "a violent felony or a serious drug offense" qualify for significant enhancement under this guideline. 18 U.S.C. § 924(e); U.S.S.G. § 4B1.4(b)(3)(B). The district court's interpretation of the Sentencing Guidelines' ACC enhancement is a matter of law re-

viewed de novo. *See United States v. Phillips* 149 F.3d 1026, 1031 (9th Cir.1998), *cert. denied,* 526 U.S. 1052, 119 S.Ct. 1359, 143 L.Ed.2d 520 (1999).[6]

Matthews objected in writing to the PSI's use of his prior convictions for burglary and attempted burglary as qualifying offenses under the Armed Career Criminal statute. Defense counsel again raised this objection at the sentencing hearing, by stating "the defense would contend that you would have to have certified copies of these judgments of conviction. I believe this Court does not have certified copies of these documents."

 While the district court clearly rejected Matthews's objection to the use of his prior offenses for ACC enhancement, the basis for the court's ruling is not clear from the record. At sentencing, the Government urged the district court to find that Matthews's burglary convictions passed the test set out in *Taylor v. United States,* 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).[7] In *Taylor,* the Supreme Court held that when convictions for burglary are used as predicate felonies under the "violent felony" clause of 18 U.S.C. § 924(e), the sentencing court must determine whether those burglaries had the "basic elements of unlawful or unprivileged entry into, or remaining in, a building or a structure, with intent to commit a crime." *Taylor,* 495 U.S. at 599, 110 S.Ct. 2143. In other words, the mere labeling of a crime as a burglary is not enough; a review of the statute or judgment of conviction must be undertaken by the sentencing court to ensure that the burglaries meet the commonly understood definition

of burglary as articulated by the Court. *See id.* at 598–99, 110 S.Ct. 2143.

 The district judge out-of-hand rejected the defense argument that Matthews's prior convictions for burglary did not qualify for the ACC enhancement, relying on the Government's written response to the defense objections to the PSI and on the Department of Probation's addendum to the PSI. The PSI provides narrative descriptions of the qualifying felonies, and the addendum responds to defense objections in a cursory manner. Nowhere are the statutes of conviction or copies of the judgment included in the record, and there is no evidence that the district court undertook an evaluation of the statutes of conviction as required by *Taylor.* The court overruled the defendant's objections to the reliance on the PSI alone, stating:

> I don't think the [ACC] statute is ambiguous nor are the guideline provisions. The convictions are for burglaries, they do qualify as violent felonies under the definitions provided....
>
> So, I'm going to sustain the presentence report investigation analysis. Overrule the objections as to the armed career status characterized as to the defendant....

Since there were no conviction records or statutes of conviction before the district court, the basis for the court's statement that the convictions "qualify as violent felonies under the definitions provided" is unsupported. Nor does the PSI include citation to the specific statutes of conviction. Instead, Matthews's prior "qualifying felony" convictions are summarized using facts

---

6. The Government urges us to review this issue under the plain error standard, arguing that Matthews waived the issue of whether his prior crimes qualified for ACC enhancement when he chose, on appeal, to frame the issue as one of sufficiency of the evidence. While the analysis we use here differs somewhat from that of defense counsel, such an analytical difference does not mean that Matthews waived the issue on appeal.

7. The transcript of the sentencing hearing records the Government attorney saying that a burglary conviction qualifies as a predicate offense under 18 U.S.C. § 924(e) "[a]s long as it meets the definition set out in the Supreme Court's tailored decision ..." It seems highly likely from the context that this was an erroneous transcription of the Government's argument relying on the *Taylor* decision.

from unspecified "court documents" and "police records."

■ We have previously held that when an enhancement is challenged on the basis that the previous convictions are not qualifying offenses, the court must examine the statutes of conviction or certified copies of conviction before imposing the enhancement. *See United States v. Potter*, 895 F.2d 1231, 1238 (9th Cir.1990) (insisting that the sentencing court examine the statutes under which the defendant was convicted for purposes of determining what counts as a qualifying felony); *Phillips*, 149 F.3d at 1033 (holding that the Government had satisfied its burden of proving by a preponderance of the evidence that the defendant had committed three qualifying offenses under 18 U.S.C. § 924(e) when it "submitt[ed] unchallenged, certified records of conviction and other clearly reliable evidence."). Here, the district court could not undertake a proper evaluation of Matthews's prior burglary convictions since it did not have before it records of the prior convictions or the statutes under which the prior convictions were imposed. In such circumstances, the imposition of ACC enhancement is an error of law.[8]

■ We therefore hold that the government in this case failed to meet its burden of proving that Matthews qualifies as an armed career criminal. Because the government failed to comply with our long-established precedents, we limit the scope of the district court's resentencing authority on remand. The government should have been aware of what it was required to introduce to meet its burden, *see Potter*, 895 F.2d at 1238; *Phillips*, 149 F.3d at 1033, and it patently failed to comply with a critical requirement. Therefore, we agree with many of our sister circuits that a party should not be able to do on remand what it has no excuse for failing to do the first time around. *See, e.g., United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C.Cir. 1995) ("The government had the burdens of production and persuasion, and we see no reason why it should get a second bite at the apple. No special circumstances justified, or even explained, the government's failure to sustain these burdens."); *United States v. Parker*, 30 F.3d 542, 553–54 (4th Cir.1994) ("[T]he prosecution has already been given one full and fair opportunity to offer whatever proof about Tonsler Park it could assemble. Having failed to seize that opportunity, the Government at resentencing should not be allowed to introduce additional evidence to prove that Tonsler Park contained a playground. One bite at the apple is enough."); *United States v. Dickler*, 64 F.3d 818, 832 (3d Cir.1995) (agreeing that when the prosecution fails to meets its burden of persuasion or production, "its case should ordinarily have to stand or fall on the record it makes the first time around" but allowing an exception because the government "tendered a persuasive reason why fairness so requires"); *United States v. Monroe*, 978 F.2d 433, 435–36 (8th Cir.1992). Here, the government does not deserve a second bite of the apple. The defendant made patently clear to the district court and the government what our precedents require. The government did not seek to cure the deficiencies in its proof. To allow the government to reopen proceedings at this stage would be to waste court resources. Parties before district courts are obliged to prepare their cases in a thorough manner. When a party's initial victory is reversed by the appellate court because the party failed to meet this obligation, we are obliged to bring to an end the wasteful process. We therefore reverse and remand for resentencing on the record as it now stands.[9] *See United States v. Hud-*

---

**8.** Because we reverse the imposition of the ACC enhancement on the basis of the district court's error of law, we need not reach Matthews's argument that the district court's reliance on the PSI to enhance his sentence as an ACC was a violation of the separation of powers.

**9.** The dissent complains that this defendant has received a "sentencing windfall" just be-

*son*, 129 F.3d 994, 995 (8th Cir.1997). We do not suggest that in all cases where the government's proof has failed the court must always resentence without reopening the record. In those cases where the government demonstrates a persuasive reason why fairness so requires, this court has the discretion to permit the government to introduce the omitted evidence on remand; where the record is unclear, we may remand with instructions to the district court to permit the government to supplement the record only if it makes the requisite persuasive showing in the district court. *See Dickler*, 64 F.3d at 832. Here, however, the record is abundantly clear and adverse to the government.

We AFFIRM the conviction, REVERSE for resentencing, and REMAND.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I concur in the court's affirmance of Matthews's conviction, but I must respectfully dissent from its disposition of the sentencing issue in this case. Even assuming that the district court erred in applying the Armed Career Criminal ("ACC") enhancement of 18 U.S.C. § 924(e),[1] I cannot concur in the drastic step of remanding for resentencing on the record as it now stands, i.e., barring the

trial court from further developing the record as appropriate. There is simply no reason in this case for deviating from our "general practice" of allowing the district court to conduct further appropriate proceedings on remand for purposes of resentencing. *United States v. Washington*, 172 F.3d 1116, 1118 (9th Cir.1999); *see also United States v. Parrilla*, 114 F.3d 124, 128 (9th Cir.1997) ("On remand, the district court should conduct further proceedings as may be necessary to enable it to make appropriate findings to resolve the factual dispute. . . ."); *United States v. Hedberg*, 902 F.2d 1427, 1429 (9th Cir. 1990) (remanding for de novo sentencing proceedings).

The Eighth Circuit opinion cited by the majority, *United States v. Hudson*, 129 F.3d 994 (8th Cir.1997), is rather cryptic and not very helpful in justifying this highly unusual step. The *Hudson* court supported its closing of the record by claiming that "we have clearly stated the governing principles as to when and how disputed sentencing facts must be proved." *Id.* at 995. The D.C. and Fourth Circuit cases cited by the majority did not involve statutes as complex as the ACC provision. Instead, those cases involved failures by the prosecution to establish facts specified by the relevant statutes, where there was no uncertainty as to the statutes' require-

cause the government failed to meet its burden of proving the defendant's past convictions. It is a "windfall" only in the sense that another similarly situated defendant might face a probation officer and a prosecutor who undertake a proper investigation in the first instance and meet the burden of proof.

1. Even assuming that the district court erred in applying the enhancement, the majority's analysis of this issue is overbroad and inconsistent with our prior precedents.

In emphasizing the need for the district court to review the statute of conviction, the majority opinion implies that *Taylor* requires a strict categorical approach when evaluating whether a burglary conviction is a qualifying conviction. *See Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (describing as "categorical" an approach that "requires the trial court to look only to the fact of conviction and the statutory

definition of the prior offense"). This implication is precluded by our past recognition that under *Taylor*'s "refinement of the categorical approach" or "modified categorical approach," a sentencing court may look beyond the statute and fact of conviction in appropriate cases. *See United States v. Parker*, 5 F.3d 1322, 1326 (9th Cir.1993).

Indeed, our cases provide district courts with significant latitude to look beyond the mere fact of conviction and statute of conviction when evaluating the § 924(e) qualifying status of prior burglary convictions (the only types of convictions at issue in this case). *See United States v. Bonat*, 106 F.3d 1472, 1476–77 (9th Cir.1997); *United States v. Alvarez*, 972 F.2d 1000, 1005–07 (9th Cir.1992); *United States v. O'Neal*, 937 F.2d 1369, 1373–74 (9th Cir.1991); *United States v. Sweeten*, 933 F.2d 765, 768–72 (1991).

ments. In *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C.Cir.1995), the government did not introduce relevant evidence of the loss caused by the defendant's bank fraud. In *United States v. Parker*, 30 F.3d 542, 551–53 (4th Cir.1994), the government sought to enhance the defendant's sentence by charging him with distribution of drugs within 1000 feet of a playground, but failed to prove that the property met the statute's definition of "playground."

The majority in this case, having oversimplified matters greatly, may regard the principles governing application of the ACC enhancement as "clearly stated" by prior case law, but more careful examination of the issue discloses that these principles are quite complex, have spawned a great deal of litigation in the lower courts, and are far from "clearly stated." Accordingly, I see no reason to punish the government by prohibiting it from completing its showing on remand to establish the applicability of the ACC enhancement with even greater certainty.

The majority's new exception to its new rule will provide little guidance to future panels, and little comfort to those of us who seek predictability and consistency in sentencing. This case by case approach contradicts the goals of both the ACC enhancement and the Sentencing Guidelines: The ACC enhancement was enacted in order to provide mandatory minimum sentences for armed career criminals. *See Sweeten*, 933 F.2d at 770. The Sentencing Guidelines were established in large part to reduce unwarranted sentencing disparities. *See United States v. Banuelos–Rodriguez*, 215 F.3d 969, 976 (9th Cir.2000) (en banc). In allowing Matthews to escape imposition of the ACC enhancement simply because of the fortuity (from Matthews's perspective) that his probation officer prepared a less-than-complete PSR, the majority flouts congressional intent with respect to both the ACC enhancement and the Sentencing Guidelines.

The process of criminal sentencing is not a game between the government and criminal defendants, in which one side or the other gets penalized for unskillful play. The goal of sentencing is to determine the most appropriate sentence in light of the characteristics of the crime and the defendant. If Matthews is an "armed career criminal" under the ACC statute (and the record makes clear that he is), then he should be sentenced as one. Because I cannot agree to bestowing a sentencing windfall upon a defendant with a long and extensive history of committing violent crimes, especially when equally culpable but less fortunate defendants have been subjected to the enhancement, I must respectfully dissent.